

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

                                        **CAUSE NO. FSD 201 OF 2023 (IKJ)**

**IN THE MATTER OF THE COMPANIES ACT (2023 REVISION)**

**AND IN THE MATTER OF CHINA INDEX HOLDINGS LIMITED**

_____

**DIRECTIONS ORDER**
_____

**UPON** the petition filed by China Index Holdings Limited (the **Company** or **CIH**) on 19 July 2023 pursuant to s.238(9) of the Companies Act (2023 Revision) (the **Proceedings**)

**AND UPON** the Company's Summons for Directions dated 19 July 2023 coming on for hearing on 23 May 2025

**AND UPON** hearing counsel for the Company and counsel for the dissenting shareholders listed in **Appendix 1** to this Order (together the **Dissenters** and each a **Dissenter**[1])

**IT IS HEREBY ORDERED THAT:**

---

[1] The Company and the Dissenters collectively the Parties; each a Party.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

1.      The Dissenters be joined as respondents to the Petition.

**A.      Appointment of Experts**

Valuation Experts

2.      The Parties shall have leave to instruct and call as a witness at trial one expert witness each (the Dissenters jointly and severally to instruct one expert between them) in the field of valuation, in order to opine upon the fair value of the Dissenters' shares in the Company as a going concern as at 17 April 2023 (the **Valuation Date**) (the **Experts**).

3.      The Experts shall be appointed no later than 42 days from the date of this Order, and on that date the Company and the Dissenters shall each advise the other in writing of the identities and contact details, including email addresses, of the respective Experts so appointed.

Additional Experts

4.      The Parties shall have liberty to apply for leave to instruct and call as a witness at trial expert witnesses in such additional field(s) as they may be advised, provided that such application shall be made no later than 28 days after the deadline for filing and service of the Company's reply evidence pursuant to paragraph 39 below.

Interest Rate Experts

5.      The Company and the Dissenters shall have leave to instruct and call, at a hearing following the Court's determination of fair value (the **Interest Hearing**), one expert witness each (the Dissenters jointly and severally to instruct one expert between them) to opine on the fair rate of interest for the purposes of section 238(11) of the

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

2

AB_LEGAL_110917158.1

FSD2023-0201                                                                    2025-05-27

Companies Act (2023 Revision) (together, the **Interest Experts**). For the avoidance of doubt, the same individual may be instructed and called as both an Expert and an Interest Expert.

6.    Directions in respect of the Interest Hearing shall apply as follows:

6.1.    If the Parties, or either of them individually, consider an Interest Hearing necessary, the Interest Experts shall be appointed within 28 days of the date of the Order made upon the Court's determination of fair value of the Dissenters' shares in the Company, and on that date the Company and the Dissenters shall each advise the other in writing of the identities and contact details, including email addresses, of the respective Interest Experts so appointed.

6.2.    Absent agreement between the Parties at that time, and notwithstanding the provisions of any other direction herein, any Party shall have liberty to apply for further directions regarding the exchange of reports and supplemental reports from, and production of a joint memorandum by, the Interest Experts, and in relation to any other matters connected with determining the fair rate of interest.

**B.    Confidentiality and Non-Disclosure Agreement**

7.    No Expert, Interest Rate Expert or Expert's Appointee (being each person whom an Expert or Interest Rate Expert appoints to assist him/her in any work relating to the Proceedings, including the preparation of the Expert Reports and the Joint Memorandums (as defined in this Order) and any other preparations in relation to the Proceedings) (each an **Appointee** and collectively the **Appointees**), nor any Dissenters (including their agents, advisors, sub-advisors, representatives, affiliates and service providers and consultants, but excluding attorneys advising on Cayman Islands law) (collectively their **Representatives**), shall be given

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

access to the Data Room (as defined below) or permitted to attend a management meeting (as defined below) until and unless each Dissenter, the Company and such Expert and Appointee enters into, and exchanges, a Confidentiality and Non-Disclosure Agreement in the same or substantially similar form attached to this Order as **Appendix 2**.

**C.    Electronic Data Room and Company Disclosure Procedure**

8.    Within 14 days from the date of this Order, the Company shall open an electronic data room (the **Data Room**) and, subject to paragraph 7 above, provide access to the Experts, the Appointees, the Dissenters, and their respective Representatives and legal advisors.

9.    The Data Room shall be accessible to each of the parties and the parties' respective advisors, consultants and any Experts defined and appointed pursuant to paragraphs 2 to 5 above, together with the Experts' team members for inspection of the documents contained therein, subject to the entry into a binding non-disclosure agreement in the form set out at Appendix 2 which must remain in effect until the conclusion of these proceedings.

10.    Within 60 days of the Data Room being opened, the Company shall upload to the Data Room all Documents (as defined in **Appendix 3**) that were made available by the Company to members of the Buyer Group (as defined in the Company's proxy statement dated 24 February 2023) for the purposes of the merger transaction, and shall also upload the index for such documents (the **Buyer Group Due Diligence Documents**).

11.    Within 90 days of the Data Room being opened, the Company shall upload to the Data Room all Documents, Communications (as defined in **Appendix 3**) and other materials which are in its possession, custody or power comprising the categories of documents set out in **Appendix 3** of this Order which were prepared or created

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

in the 5 year period ending on the Valuation Date, 17 April 2023 and which are relevant to the determination of fair value.

12.    In addition to giving disclosure of the non-exhaustive categories of documents required by paragraphs 10 and 11 above, within a further 60 days following the end of the period set out at paragraph 11 above, the Company shall upload to the Data Room all additional Documents, Communications (as defined in **Appendix 3**) and other materials which are in its possession, custody or power prepared or created in the 5 year period ending on the Valuation Date which are relevant to the determination of the fair value of the Dissenters' shares in the Company as at the Valuation Date.

13.    The Company shall comply with the disclosure protocol at **Appendix 5** hereto when conducting searches for potentially relevant documents and uploading documents to the Data Room. In relation to documents that have been redacted pursuant to **Appendix 5**, upon request, documents shall be provided in their native format manually amended by way of deletion of redacted information.

14.    All Parties who have been given access to the Data Room shall be given full access rights to the documents therein, save that no Party will have the ability to modify documents in-situ within the Data Room; however, all such documents shall be in a form which the Dissenters can download to their own systems either individually or (upon request to, and facilitated by, the Data Room service provider) as a bulk download and, in turn, modify outside of the Data Room.

15.    The costs of and associated with the establishment and maintenance of the Data Room, including the Data Room provider's costs of (i) uploading, processing and hosting the documents added to the Data Room, (ii) producing the Data Room Index (as defined below) and any updated versions thereof, (iii) technical support, including the costs of facilitating any bulk export or download of documents and (iv) Experts, Appointees, Dissenters and Representatives seeking access to the

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

5

Data Room, shall be borne initially by the Company on an ongoing basis but shall ultimately be costs in the Proceedings.

16.     The Company shall, on an ongoing basis whilst the Proceedings are extant, bear the costs of a reasonable number of access codes per Dissenter and per Expert, to facilitate access to the Data Room (such costs ultimately to be costs in the Proceedings). Should any Dissenter require additional access to the Data Room, such Dissenter shall bear the specific costs of such access, and the Company will arrange for such costs to be charged by the Data Room provider to the Dissenter directly.

17.     No Data Room usage report, or any other analysis of any Party's usage of the Data Room, shall be run by any Party on the usage of another Party, its Representatives, legal advisers or its appointed Expert and his/her Appointees without that Party's express written consent or order of the Court.

**D.     Lists of Documents; Translations**

18.     The Company will ensure that the documents it uploads to the Data Room will be appropriately indexed in an electronically searchable form (the **Data Room Index**). The Data Room Index shall be compiled in a manner which complies with the requirements for lists in O.24, r.5(1) of the Grand Court Rules (**GCR**). This index shall be updated contemporaneously with any documents being added to the Data Room by the Company. Any changes in the content of the Data Room shall be clearly identified to the Dissenters at the same time they are made.

19.     In relation to the documents which are to be disclosed pursuant to this Order, the Company shall, on or before each of the respective dates for compliance with paragraphs 10, 11 and 12 above (and from time to time thereafter as may be necessary) file and serve on the Dissenters a list of documents complying with GCR O.24, r.5 (each such list a **List of Documents**). So long as the Data Room Index has been provided in a manner which complies with the requirements for

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB LEGAL 110917158.1

lists in GCR O.24, r.5(1), the Data Room Index shall be treated as the Company's index of documents in accordance with GCR O.24, r.5(1) and any documents that may fall within GCR O.24, rr.5(2) and 5(3) shall be listed separately in accordance with Form No. 16 of **Appendix 1** to the GCR.   Nothing in this Order or in **Appendix 2** hereto shall derogate from each Party's implied obligation not to use the documents obtained thereby for any improper or collateral purpose.

20.    In the event that any Party wishes to rely on a document which is not in the English language and a certified English translation is not available, that Party shall procure and provide a certified English translation of the document relied on at its own initial cost. An electronic copy of the certified English translation shall be uploaded to the Data Room as soon as practicable. The costs of any such translations shall ultimately be costs in the proceedings.

**E.    Experts' Information Requests of the Company**

21.    Unless the Court otherwise orders, the Company shall upload to the Data Room any additional information, Documents or Communications (as defined in **Appendix 3**), or other materials which are or have been in its possession, custody or power that are requested by any Expert for the purpose of preparing his/her own opinion (**Information Requests**). For the avoidance of doubt, if an Expert so requests, this may include Documents, Communications, materials or information produced after the Valuation Date. Such requests may be made from the date of the upload of documents to the Data Room pursuant to paragraph 10 above. Any Information Requests from an Expert and any responses from the Company thereto shall be in writing and in English and shall be copied simultaneously by email to the Expert for the other party or parties to the email addresses notified in accordance with paragraph 3 above.

22.    The Experts' Information Requests may be made periodically but the Experts shall use their best endeavours to submit only non-repetitive, concise and clear

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

questions.

23. The Company shall provide written answers in English to each batch of Information Requests and shall upload the written answers and any responsive Documents or Communications (as defined in **Appendix 3**) or other materials to the Data Room as soon as practicable, and in any event (unless otherwise agreed) within 21 days of receipt of that Information Request. For the avoidance of doubt, should the Information Request be received by the Company after 5.30pm (Cayman Islands time), this timeframe shall begin to run from 8.30am (Cayman Islands time) the following Cayman Islands business day.

24. Submitted questions and information requests will be answered and responded to in the order of their request.

25. Unless otherwise agreed, the cut-off date for the submission of the final Information Request to the Company is 28 days before the date fixed for the relevant exchange of Expert Reports (as provided for at paragraph 41 below) and the cut-off date for the submission of written answers by the Company is 20 days before the date fixed for the relevant exchange of Expert Reports.

**F.    Management Meetings**

26. Within 28 days of a request by any of the Experts, unless otherwise agreed or directed by the Court, the Company shall procure that appropriate members of its management team be available to meet with all Experts simultaneously, in person (and if in person, additionally by way of video link) or by way of video link as may be agreed between the Parties, such meeting to be scheduled to take place at a mutually convenient place and time, for the purpose of providing information and answering queries which are relevant to the preparation of the Experts' respective Expert Reports (a **Management Meeting**).

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

27.    The number of Management Meetings requested by the Experts shall not be restricted, save that no Management Meetings may be requested by any of the Experts within 42 days of the relevant Experts' Reports being due to be exchanged, no Management Meeting shall take place within 28 days of any prior Management Meeting, unless otherwise agreed between the Parties or directed by order of the Court.

28.    The Parties shall agree on the time and date, attendees, format (video conference or in person), and (if applicable) location for a Management Meeting.

29.    If agreement cannot be reached as to the time or date, attendees, format and/or location of a Management Meeting, any Party may apply to the Court for directions on not less than 10 working days' notice to the other Parties, such matter to be resolved by the Court on the papers unless the Court otherwise orders.

30.    Management Meetings shall be conducted in English. If necessary to facilitate efficient and effective participation by any member of the Company's management team, the Company shall arrange for independent interpreters to be present at Management Meetings and the Dissenters may, in the alternative, instruct their own interpreter(s) for a Management Meeting. The costs of any interpreter shall be borne equally by the Company and the Dissenters. The costs of all interpreters shall nonetheless be costs in the Proceedings.

31.    Only members of the Company's management team, the Parties' legal advisers, the Experts (together with the Experts' team members), Dissenters or representatives of the Dissenters, any interpreters (if applicable) and any transcription service providers shall attend Management Meeting save that any Management Meeting held by video-link or held in person but for which it is possible to provide video-link may be attended by Dissenters or representatives of the Dissenters (who do not attend in person). Each Party shall be responsible for the travel, visa, accommodation and other logistical arrangements of its Expert(s)

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

and legal advisors in relation to Management Meetings and the costs thereof shall be costs in the Proceedings.

32.     Each Expert shall provide a list of questions and/or topics (a **List of Questions and Topics**) to the Company not less than 21 days prior to the agreed date for a Management Meeting. The List of Questions and Topics shall be copied by email to the Expert for the other Party or Parties at such time as it is sent to the Company. Any Expert may ask reasonable follow-up questions at such Management Meeting to the extent that they consider it necessary. If an Expert reasonably wishes to raise a new question or topic not included in the List of Questions and Topics, reasonable accommodation shall be made by the Company and agreement to provide a response shall not be unreasonably withheld.

33.     The Company shall arrange for Management Meetings to be recorded and a transcript prepared in English (the **Management Meeting Transcript**). Both the recording and the transcript shall be circulated by the Company and uploaded to the Data Room by the Company as soon as reasonably practicable thereafter and in any case within 14 days of the relevant Management Meeting. The cost of such recording and transcript shall be borne equally by the Company and the Dissenters and such costs shall be costs in the Proceedings.

34.     Within 21 days of uploading the transcript of a particular Management Meeting, the Company and Dissenters shall be permitted to consider whether there are any errors in the transcript and, if so, explain any such errors to the other party and produce (or, if already produced and uploaded to the Data Room, identify) the supporting documents which demonstrate any such error.

35.     Within 14 days of receiving notice of any purported errors and supporting documents, the party that received notice of purported errors shall confirm their agreement or otherwise to the purported errors that have been identified, and within 7 days thereafter the Company shall circulate to the Dissenters, and if not

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB LEGAL 110917158.1

provided, the Dissenters may circulate to the Company a new draft. In addition, a copy of the transcript shall be uploaded to the Data Room which identifies (a) any amendments agreed between the parties, and (b) any statements which either party maintain are erroneous but which the parties have not agreed should be noted (the "**Reviewed Transcript**") with documentation included in support of each side's respective position.

36.    To the extent they consider it appropriate to do so, an Expert may refer to the Reviewed  Transcript in their Report, the Joint Memorandum and/or Supplemental Report.

**G.    Dissenter Disclosure**

37.    Subject to the Company entering into, and exchanging, a non-disclosure agreement in the same or substantially similar form as that contained in **Appendix 2**, with the Dissenter as a disclosing Party and the Company as the recipient, each Dissenter shall upload to the Data Room (or, at the Dissenter's election, by way of an alternative data room) within the period specified in paragraph 12 of this Order, documents in its possession, custody or power falling within the categories of documents identified at **Appendix 4** of this Order which were prepared and created in the 5 year period ending on the Valuation Date and which are relevant to the determination of the fair value of the shares in the Company as at the Valuation Date. Each Dissenter's disclosure in the Data Room (or any alternative data room) shall be available to the Company and the Experts but not to the other Dissenter.

38.    The costs of hosting such documents in the Data Room (but not in an alternative data room, which costs shall be borne initially by the Dissenters on an ongoing basis, but shall ultimately be costs in the Proceedings) shall be borne initially by the Company on an ongoing basis but shall ultimately be costs in the Proceedings, and paragraphs 13 to 20 above shall apply in the same manner, and with the

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB LEGAL 110917158.1

necessary modifications to give effect to those paragraphs, to the Dissenters' upload of documents to the Data Room (or any alternative data room).

### H.    Factual Affidavits

39.    The Company shall file and serve any factual evidence by no later than a date 105 days from the date of this Order with English translations. The Dissenters shall file any evidence in response by no later than 60 days of service of the Company's factual evidence upon them. The Company shall file any evidence in reply with English translations by no later than 21 days of service of the Dissenters' evidence upon it.

40.    Any factual evidence to be relied upon at the hearing of the Petition shall be given by affidavit or affirmation and leave is hereby granted to the Parties to cross-examine any deponent of any factual affidavit or affirmation and the deponent(s) of any such affidavit(s) or affirmation(s) shall attend for cross-examination on the condition that notice requiring their attendance is given 14 days before the CMC (as defined below) or, if the CMC is dispensed with or the date of the CMC is fixed less than 14 days prior to the hearing of the CMC then the deadline shall be 30 days prior to trial.

### I.    Expert Reports and Joint Memorandum

41.    Signed reports of each of the Valuation Experts (the **Expert Reports**):

41.1    Shall be confined respectively to the issue of the fair value of the Dissenters' shares as a going concern in the Company as at the Valuation Date;

41.2    Shall be in accordance with the Rules for Expert Witnesses in the FSD

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB LEGAL 110917158.1

Guide; and

41.3    Shall be exchanged simultaneously 21 weeks after the deadline for the Company's evidence in reply pursuant to paragraph 39 above.

42.    The Experts shall each meet at a mutually convenient time, whether in person, by telephone, conference call or video link or howsoever they shall decide and so often as they jointly consider necessary (the **Experts' Meeting**), but no later than 21 days after the exchange of the respective Expert Reports, to discuss the differences between their respective Expert Reports with a view to narrowing the issues between them and producing the Joint Expert Memorandums required by paragraph 43 below.

43.    A joint memorandum of the Experts (the **Joint Expert Memorandum**) recording:

43.1.    the fact that they have met;

43.2.    when and where they met, and that they discussed the Expert issues;

43.3.    the issues on which they agree;

43.4.    the issues on which they disagree; and

43.5.    a brief summary of the reason for any such disagreement,

shall be completed and issued to the Parties by the Experts by no later than 28 days following the respective Experts' Meeting.

44.    Any supplemental Expert Reports (**Supplemental Expert Reports**) shall be exchanged simultaneously by no later than 56 days following the issuance of the Joint Expert Memorandums.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

45.     The Company and the Dissenters shall each be at liberty to call as expert witnesses at trial their own appointed Experts whose report(s) have been exchanged pursuant to the provisions of this Order.

46.     The Company shall be at liberty to cross-examine the Dissenters' appointed Experts on their report(s) at trial, and the Dissenters shall be at liberty to cross-examine the Company's appointed Experts on their report(s) at trial.

**J.     Case Management, Case Management Conference and Trial Dates**

47.     Any Party that seeks foreign ancillary relief in aid of these Proceedings, whether by way of third party discovery applications, applications in the United States of America under 28 U.S.C. s.1782, or otherwise, shall, as soon as practicable after serving any such application (and in any event within 7 days' of service), notify this Court, and the other Parties to the Proceedings.

48.     Each party will disclose promptly to the other parties any and all documents received from any third-party or non-party as a result of any ancillary relief in aid of these proceedings obtained by the party (whether by way of an order of this Court, an order of any foreign Court or voluntary assistance by the third party). Disclosure shall be made in accordance with paragraphs 19 and 20 (as applicable).

49.     Unless the Parties otherwise agree, a Case Management Conference (**CMC**) shall be held on the earliest date convenient to the Court and the Parties' Cayman Islands legal advisors and counsel after the deadline for exchange of any Supplemental Reports, or in the event that no Supplemental Reports are exchanged, on the earliest date convenient to the Court and the Parties' Cayman Islands legal advisors and counsel once it is confirmed that no Supplemental Reports will be exchanged. The Parties may agree that the CMC be dispensed

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

14

AB LEGAL 110917158.1

FSD2023-0201 2025-05-27

with provided that the Court does not indicate a CMC is necessary.

50.     The Company and the Dissenters shall, on an ongoing basis while the Proceedings are extant, each pay 50% of the cost of the recording and transcription of any hearings in the Proceedings, and these costs shall ultimately be costs in the Proceedings. The Parties shall agree on the supplier and fee quote prior to each hearing.

51.     For convenience only, the deadlines set out in the various paragraphs in this Order are tabulated in a schedule attached to this Order as **Appendix 6**. To the extent there is any inconsistency between the terms of this Order and **Appendix 6**, this Order shall prevail.

52.     Save as varied by this Order or further order, the practice and procedures set out in the FSD Guide are to be followed.

53.     Liberty for any Party to apply for further directions in respect of the matters addressed in this Order and any other matters prior to the CMC.

54.     The trial of the Petition shall be listed on the first available date after 15 September 2026, with a time estimate of 4 weeks.

55.     Within 15 days of the filing of this Order, the Company shall inform the Dissenters of the total number of shares that shall be the subject of the trial of the Petition, and shall inform the Dissenters of any change within 3 days of such change.

Holiday blackout periods

56.     The following periods are dedicated holiday periods to enable the Parties and the legal and Expert teams to take leave should they desire to do so. Time shall not run during these periods for any purpose in relation to this Proceeding, including

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

any task provided for under this Order and in respect of any correspondence exchanged in relation to this Proceeding:

56.1.    24 December to 2 January;

56.2.    Chinese New Year, being seven calendar days from the first Bank Holiday in Beijing for Chinese New Year; and

56.3.    National Day Golden Week, being seven calendar days from the first Bank Holiday in Beijing for the Golden Week.

57.    Costs be costs in the proceedings.


Dated this 27 day of May 2025

Filed this 27 day of May 2025


_____
**THE HONOURABLE JUSTICE KAWALEY
JUDGE OF THE GRAND COURT**


This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB_LEGAL 110917158.1

**APPROVED AS TO FORM AND CONTENT**

*Conyers Dill & Pearman LLP*

_____

**CONYERS DILL & PEARMAN LLP**

Attorneys for the Company

*Carey Olsen.*

_____

**Carey Olsen**

Attorneys for the Dissenters

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

**Appendix 1**

**List of Dissenters**

|   | Dissenter | Address |
|---|-----------|---------|
| 1 | Koa Capital L.P. | 99 Wall St., New York, NY 10005, U.S.A. |
| 2 | 507 Summit LLC | 853 Broadway, Suite 1109, New York, NY 10003, U.S.A. |

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

### Appendix 2

### Confidentiality and Non-Disclosure Agreement

**[*NB: Where the Company is the Recipient, references to the "Company" shall be amended accordingly*]**

This Confidentiality and Non-Disclosure Agreement (the **"Agreement"**), effective [Date] (the **"Effective Date"),** is entered into

BETWEEN

**China Index Holdings Limited**, a company incorporated under the laws of the Cayman Islands and having its registered office address at c/o Maples Corporate Services Limited, PO Box 309, Ugland House, George Town, Grand Cayman KY1-1104, Cayman Islands (the **"Company"**)

AND

[NAME], a company incorporated under the laws of [jurisdiction] and having its registered office address at [address] (the **"Recipient"**),

(each herein referred to individually as a **"Party",** and collectively as the

**"Parties"**).

**WHEREAS:**

A.    On 22 December 2022, the Company entered into an agreement (**"Merger Agreement"**) and plan of merger (**"Plan of Merger"**) with CIH Holdings Limited (**"Parent"**) and CIH Merger Sub Holdings Limited (**"Merger Sub"**). Pursuant to the terms of the Merger Agreement, the Merger Sub merged with and into the Company, with the Company continuing as the surviving company and a wholly-owned subsidiary of the Parent and ceasing to be a publicly traded company (the **"Merger"**).

---

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

B.    The shareholders of the Company and the Merger Sub were not required to approve or authorize the Merger, pursuant to section 233(7) of the Cayman Islands Companies Act (2023 Revision) (**"Act"**), given that the Merger Sub held shares in the Company which represented at least 90% of the votes at a general meeting of the Company and a copy of the Plan of Merger was given to every member of the Company.

C.    The dissenting shareholders of the Company identified in **Appendix 1** of the Directions Order (as defined herein) (each a **"Dissenter",** and collectively the **"Dissenters"**) have dissented from the Merger pursuant to Section 238(5) of the Act.

D.    On 19 July 2023, the Company filed a petition in the Grand Court of the Cayman Islands to determine the fair value of the Dissenters' shares (Cause No. FSD 201 of 2023 ([ ]), the "**Proceedings**").

D.    Pursuant to an order for directions in the Proceedings dated [date] (the **"Directions Order"**), the Company is to establish an electronic data room (the **"Data Room"**) to which discovered documents are to be uploaded for the purposes of the Proceedings.

E.    Pursuant to the Directions Order, meeting(s) may be convened at which members of the Company's management team will provide information and answer queries relevant to the preparation of the Parties' Experts' respective Expert Reports (the "**Management Meeting**").

F.    The Company is engaged in proprietary and confidential business activities, and could be prejudiced if Confidential Information (as defined herein) pertaining to the Company or its business is disclosed publicly or to third parties, or used by the Recipient, its Representatives and/or Appointees (as defined herein) for purposes not reasonably related to the purposes of the Proceedings.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB-LEGAL-110917158.1

**NOW, THEREFORE,** in consideration of the promises and the mutual agreements and covenants hereinafter set forth, and intending to be legally bound, the Company and the Recipient hereby agree as follows:

**1    DEFINITIONS AND INTERPRETATION**

1.1    In this Agreement the following words and expressions shall have the following meanings:

(a)    **"Affiliates"** means a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling corporation.

(b)    **"Appointee"** means each person whom an Expert appoints to assist him/her in any work relating to the Proceedings, including the preparation of the Expert Reports and the Joint Memorandum (such other terms as defined in the Directions Order).

(c)    **"Representatives"** means, with respect to a Recipient, its Affiliates, agents, advisers, sub-advisers, representatives, legal advisors, service providers and consultants.

1.2    References to recitals and clauses are references to the recitals to and clauses of this Agreement.

1.3    Headings to clauses and the use of bold type are for convenience only and shall not affect the interpretation or construction of this Agreement.

1.4    Words in the singular include the plural and vice versa.

**2    CONFIDENTIAL INFORMATION**

2.1    "Confidential Information" means:

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB-LEGAL-110917158.1

(a)    Any information disclosed by the Company to the Recipient, its Representatives and/or Appointees either directly or indirectly, in writing or orally, related to: trade secrets; business, commercial, or financial information; financial statements; financial or business plans and strategies; projections or analyses for future or prior periods; tax data; business and marketing plans and strategies; assets and liabilities; proposed strategic transactions or acquisitions, strategic alternatives, or business combinations; or other personally or commercially sensitive or proprietary information of the Company and its subsidiaries; and

(b)    Any notes, analyses, compilations, studies, interpretations, documents or records containing, referring to, relating to, based upon or derived from, such Confidential Information, in whole or in part, created by the Recipient, its Representatives and/or Appointees.

2.2    Confidential Information shall not, however, include any information that:

(a)    Was publicly known or made generally available to the public without a duty of confidentiality prior to the time of disclosure to the Recipient by the Company;

(b)    Has become publicly known or made generally available to the public without a duty of confidentiality after disclosure to the Recipient by the Company through no action or inaction of the Recipient in breach of this Agreement; or

(c)    Is in the rightful possession of the Recipient without confidentiality obligations at the time of disclosure by the Company to the Recipient as shown by the Recipient's then contemporaneous written files and records kept in the ordinary course of business.

2.3    If the Recipient or its Representative becomes compelled by applicable law, rule or regulation or request of governmental or regulatory authority to disclose any Confidential Information, the Recipient will, insofar as it is permitted to do so by

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB LEGAL 110917158.1

applicable law, rule or regulation and other than in the case of routine regulatory investigations, provide the Company with a written notice in advance of such disclosure, where practicable, and will provide such reasonable assistance to the Company as the Company may require at the Company's sole expense, in seeking a protective order or other appropriate remedy.

2.4    If the Company waives the Recipient's compliance with this Agreement or fails to obtain a protective order or other appropriate remedy, the Recipient will furnish only that portion of the Confidential Information that it is required to disclose by applicable law, rule or regulation provided that any Confidential Information so disclosed shall maintain its confidentiality protection for all purposes other than such disclosure compelled by applicable law, rule or regulation.

3    **MAINTENANCE OF CONFIDENTIALITY**

3.1    Except as may otherwise be agreed in writing by the Company or permitted by the courts of the Cayman Islands by way of relief from the implied undertaking or pursuant to this Agreement or otherwise, all Confidential Information and its contents received by the Recipient, its Representatives and/or Appointees shall be:

(a)    Maintained as set forth in this Agreement;

(b)    Disclosed only to such persons and in such manner as permitted by this Agreement; and

(c)    Used solely for the purposes of, or related to, the Proceedings.

3.2    Prior to its Representatives and/or Appointees being granted access to the Data Room, and/or receiving the Confidential Information, the Recipient shall:

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

(a)    Ensure that its Representatives and Appointees expressly agree in writing to comply with the confidentiality terms imposed by this Agreement or are otherwise bound by confidentiality obligations no less restrictive than those contained herein; and

(b)    Confirm in writing to the Company that the agreements in clause 3.2(a) above have been obtained or obligation of confidentiality (as contemplated by clause 3.2(a) above) are otherwise in place.

3.3    The Recipient, its Representatives and its Appointees shall keep the Confidential Information confidential and shall not, unless for the purposes of, or related to, these Proceedings:

(a)    Disclose any Confidential Information or permit any Confidential Information to be disclosed, either directly or indirectly, to any third party (other than other Representatives or Appointees or Recipients who have signed a confidentiality agreement in this form and their Representatives or Appointees) without the Company's prior written consent; or

(b)    Use the Confidential Information for any purpose other than as set out at Clause 3.1 above or exploit the Confidential information in any way:

(i)    In communications with any competitor or competitors of the Company or its subsidiaries or affiliates; and/or

(ii)    As a basis for trading in the securities of the Company or its subsidiaries or affiliates.

3.4    The Recipient shall take necessary measures to protect the confidentiality, and to avoid disclosure and unauthorised use, of Confidential Information. Without limiting the foregoing, the Recipient shall take at least those same measures it employs to protect its own confidential information.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

3.5    The Recipient shall reproduce the Company's proprietary rights notices on any copies of documents, in the same manner in which such notices were set forth in or on the original.

**4    BREACH OF CONFIDENTIALITY**

4.1    The Recipient shall notify the Company of:

(a)    Any unauthorized use or disclosure, or suspected unauthorized use or disclosure, of Confidential Information by the Recipient, its Representatives and/or Appointees as soon as practicable upon becoming aware of such use or disclosure; and

(b)    Any actions by the Recipient, its Representatives and/or Appointees which are in breach of their respective obligations under this Agreement as soon as practicable upon becoming aware of such use or disclosure.

4.2    In the event of a breach of 4.1(a) and/or 4.1(b) of this Agreement, the Recipient shall reasonably cooperate with any and all efforts of the Company to help the Company regain possession of Confidential Information and/or prevent its further unauthorized use or dissemination.

4.3    The Recipient agrees to be responsible for any breach of this Agreement by any of its Representatives and/or Appointees that have received or obtained Confidential Information.

4.4    Nothing in this Agreement shall prejudice in any way the rights of the Company to file an application with the Cayman Islands court for a protective order relating to any Confidential Information. For the avoidance of doubt, any failure by the Company to obtain such an order or other protection after having a reasonable opportunity to do so shall not preclude the Recipient from making use of the Confidential Information in the Proceedings.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB-LEGAL-110917158.1

5     **DESTRUCTION OF MATERIALS**

5.1     Upon the earlier of (i) the final determination of the Proceedings (including all appeals therefrom), or (ii) a legally binding agreement having been executed between the Company and the Recipient as to the amount payable to it as a result of the Merger, and payment having been duly received by the Recipient (the "**Final Determination**") the Recipient shall, upon request by the Company following the Final Determination, take all reasonable and proportionate steps to:

(a)     subject to clause 5.2, destroy any materials that are in writing or other tangible medium or permanently erase any materials that are in an electronic or other non-tangible medium (to the extent technologically feasible) that constitute Confidential Information obtained or possessed by the Recipient; and

(b)     procure that any of its Representatives and/or Appointees destroy any materials that are in writing or other tangible medium or permanently erase any materials that are in an electronic or other non-tangible medium (to the extent technologically feasible) that constitute Confidential Information obtained or possessed by the Recipient's Representatives and/or Appointees.

5.2     Notwithstanding the foregoing, one copy of the Confidential Information may be retained by the Recipient or its attorneys to comply with applicable law or regulation, provided that copies so retained shall continue to be treated as confidential in accordance with the provisions of this Agreement.

5.3     Notwithstanding the destruction or erasure of Confidential Information pursuant to this Clause 5, the Recipient and its Representatives shall continue to be bound by their confidentiality obligations and other obligations under this Agreement.

6     **INDEMNITY**

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

The Recipient shall indemnify the Company against all liabilities, costs, expenses, damages and losses suffered or reasonably incurred by the Company arising out of or in connection with any breach of this Agreement by the Recipient, its Representatives and/or Appointees.

## 7 INADEQUACY OF DAMAGES

The Recipient agrees that any violation of this Agreement may cause irreparable injury to the Company which cannot be adequately remedied in monetary terms or other damages, and accordingly the Company may be entitled to obtain injunctive relief, specific performance and/or any other equitable relief in addition to all other legal remedies concerning any threatened or actual breach of any of the provisions of this Agreement.

## 8 TERM

8.1    The obligations of the Recipient under this Agreement shall survive until 12 months following compliance with Clause 5 above. Notwithstanding the foregoing, the Recipient's duty to hold in confidence any Confidential Information that was disclosed by the Company during the term of this Agreement shall remain in effect for five years.

8.2    The termination of this Agreement shall not affect any accrued rights or remedies to which the Company is entitled.

## 9 NO WARRANTY

The Company makes no warranties, express, implied or otherwise, with respect to non-infringement or other violation of any intellectual property rights of a third party or of the recipient.

## 10 NO LICENSE

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

This Agreement shall not be construed as creating, conveying, transferring, granting or conferring upon the Recipient any rights, license or authority in or to the Confidential Information except as expressly set forth in this Agreement. Title to the Confidential Information will vest solely with the Company.

**11    MISCELLANEOUS**

11.1.    This Agreement shall bind and inure to the benefit of the Parties and their respective successors and permitted assigns; except that the Recipient may not assign or otherwise transfer this Agreement, by operation of law or otherwise, without written consent of the Company. Any assignment or transfer of this Agreement in violation of the foregoing shall be null and void. The Recipient hereby represents and warrants that the person executing this Agreement on its behalf has express authority to do so, and, in so doing, to bind the Party thereto.

11.2.    This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior written and oral agreements between the Parties regarding such subject matter.

11.3.    If any provision herein shall be determined to be void or unenforceable in whole or in part for any reason whatsoever such invalidity or unenforceability shall not affect the remaining provisions or any part thereof contained within this Agreement and such void or unenforceable provisions shall be deemed to be severable from any other provision or part thereof herein contained.

11.4.    No provision of this Agreement may be waived except by a written instrument executed by the Party against whom the waiver is to be effective. A Party's failure to enforce any provision of this Agreement shall neither be construed as a waiver of the provision nor prevent the Party from enforcing any other provisions of this Agreement. No provision of this Agreement may be amended or otherwise modified except by a written instrument signed by the Parties to this Agreement.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB_LEGAL_110917158.1

11.5.   The Parties may execute this Agreement in one or more counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement. This Agreement may be delivered by email or facsimile transmission, and email or facsimile copies of executed signature pages shall be binding as originals.

## 12   GOVERNING LAW AND JURISDICTION

12.1.   This Agreement and any dispute, claim, suit, action or proceeding of whatever nature (including non-contractual disputes or claims) arising out of or in connection with it or its subject matter or formation shall be governed by and construed in accordance with the laws of the Cayman Islands.

12.2.   Each Party irrevocably agrees to submit to the exclusive jurisdiction of the courts of the Cayman Islands over any claim or matter arising under or in connection with this Agreement or the legal relationship established by this Agreement; provided that nothing in this Clause 12 shall prevent a Party from seeking interlocutory or interim injunctive relief in other jurisdictions.

12.3.   Each Party irrevocably agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

[*Signature page follows immediately.*]

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AR-LEGAL-110917158.1

**IN WITNESS WHEREOF,** the Parties acknowledge that they have read and understood this Agreement and have executed this Agreement as of the Effective Date.

| | | |
|---|---|---|
| Signed for and on behalf of | ) | |
| China Index Holdings Limited | ) | |
| by its duly authorised agent | ) | |
| | ) | Name: |
| | ) | Designation: |
| | ) | Date: |
| In the presence of: | ) | |
| | ) | |
| | ) | |
| | ) | |

Name:

Date:

| | | |
|---|---|---|
| Signed for and on behalf of | ) | |
| [NAME OF RECIPIENT] | ) | |
| | ) | |
| | ) | Name: |
| | ) | Designation: |
| | ) | Date: |
| In the presence of: | ) | |
| | ) | |
| | ) | |

Name:

## Appendix 3

## Categories of documents to be disclosed pursuant to paragraph 11 and 12 of the Order

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

In this Appendix 3, headings are for convenience only and shall not affect the interpretation or construction of this Appendix, and the following definitions apply:

"Document" includes, without limitation, original, draft and all non-identical copies of all hard copy and electronically or digitally stored information, including all forms of correspondence, agreements, instant messages (including text messages, WeChat messages, Signal messages, WeCom messages, QQ messages, WhatsApp messages and all other data stored on any form of messaging application), memoranda, calendars and other planners, records of telephone conversations, notebooks and all other forms of work papers, presentations, spreadsheets, graphs, charts, and any and all other forms of analyses.

"Communication" means any written, or electronic transmission of information (in the form of facts, ideas, inquiries, or otherwise), including all meetings, discussions, dialogues, conversations, telephone calls, interviews, negotiations, cablegrams, mailgrams, telegrams, telexes, cables, correspondence, facsimiles, emails, text messages, chat messages (including Bloomberg messages, Instant Bloomberg chats, WeChat messages, Signal messages, WeCom messages, QQ messages, and WhatsApp messages), or other forms of written interchange, however transmitted, including reports, notes, memoranda, lists, agenda, proposals, opinions, messages, video tapes, and other documents or records of communication.

Unless otherwise stated, the definitions in the Company's proxy statement dated 24 February 2023 (the "**Proxy**") are adopted herein below.

The Company shall be responsible for producing any of the following documents if held within their, and including their officers, board members or employees, possession and power to produce.

**The Company, the Special Committee and their advisors**

(a)    Communications and Documents produced by, provided to or received from Roth Capital or its representatives or affiliates (collectively the "**Financial Advisor**") in relation to the 2020 Proposed Transaction, Proposed Transaction and the Merger, which includes all matters set out in the Proxy (including but not limited to the Financial Advisor's fairness opinions dated 22 December 2022 (the "**Fairness Opinion**") including Communications

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

31

AB-LEGAL-110917158.1

FSD2023-0201                                                            2025-05-27

and Documents passing between the Financial Advisor and:

i.      The independent directors or Special Committee of the Company;

ii.     The Company's other directors, management, employees, counsel or advisors; and

iii.    The Buyer Group and/or any of their respective advisors and/or representatives (the **"Buyer Group Team"**); and

iv.     Any other potential purchasers or interested parties.

(b)    Communications and Documents in respect of the Company's decision to form the Special Committee, including the Company's choice of the members of the Special Committee, and any Communications and Documents in relation to the appointment of Mr. Jianping Ye and Mr. Jason Chenyang Wei as members of the Special Committee (including Communications and Documents made and produced prior to their appointment) and any internal or external analysis conducted in respect of their suitability and independence.

(c)    Communications and Documents relating to the Special Committee's decision to engage Gibson, Dunn & Crutcher LLP as its legal counsel and Roth Capital as its financial advisor in connection with the Proposed Transaction and the Merger, including Communications and Documents relating to any other legal or financial advisor considered but not appointed.

(d)    Communications and Documents produced by, provided to, received from or passing between any of (i) the Company and any of its representatives, agents, employees or advisors, (ii) the members of the Special Committee, (iii) the Financial Advisor, (iv) any member of the Buyer Group, (v) any other potential purchaser or interested party, (vi) any other advisors or consultants to the Company or the Special Committee and/or (vii) any shareholders of the Company, in relation to the 2020 Proposed Transaction, Proposed Transaction and the Merger, including for the avoidance of doubt any minutes or agendas of meetings and any supporting documentation, notes, records and any other reports prepared for such meetings.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB-LEGAL-110917158.1

(e)     Communications and Documents relating to the negotiation of, process related to, and terms and conditions of the 2020 Proposed Transaction, Proposed Transaction and the Merger, including any and all proposals considered but not implemented.

(f)     Communications and Documents produced by, provided to, received from or communicated between employees, directors, management or consultants of the Company in the production and calculation of any projections sent to the Financial Advisor and/or Special Committee and any other sets of projections in existence (including, for the avoidance of doubt, in respect of the Opinions as well as any other proposal).

(g)     Communications and Documents concerning the downward business performance of the Company and its purported or potential impact on the Proposed Transaction, including all Communications and Documents produced by, provided to and any advice received by the Company and / or Special Committee relating to these issues.

(h)     Communications and Documents relating to the Special Committee's discussion with Gibson Dunn regarding the general market practice of a pre-signing market check and a post-signing "go-shop" procedure where a buyer group owns more than 50% of the aggregate voting power, and the Special Committee's decision to not conduct a pre-signing market check or post-signing "go-shop".

(i)     Communications and Documents involving the Company's auditors, KPMG Huazhen LLP and MaloneBailey, LLP, including the creation and write-down of assets or liabilities between related parties, including between the Company and Fang Holdings for the period 17 April 2018 – 17 April 2023 which are relevant to the determination of the fair value of the Dissenters' shares in the Company as at the Valuation Date.

**Buyer group and potential purchasers**

(j)     Communications and Documents produced by, provided to or received from any member of the Buyer Group in relation to the Proposed Transaction or the Merger (including, but not limited to, for the purposes of undertaking due diligence on the Company, all management forecasts or other budgets, models or reports provided to the same, all prior

---

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB-LEGAL-110917158.1

versions and drafts of the Proposed Transaction and Merger Documents and all Communications and Documents relevant to the negotiation of same).

(k)    Communications and Documents produced by, provided to or received from the Buyer Group or any other potential purchaser's or interested party's financiers or prospective financiers for the purposes of securing finance for the Proposed Transaction or the Merger or any potential or actual proposal (by way of debt finance or equity capital contributions), undertaking due diligence on the Company and/or for negotiating the terms of the Proposed Transaction, Merger or related proposals (including those concerning price, structure or conditions).

**Corporate and financial documents**

(l)    Minutes and agendas of Board meetings and any supporting documentation and any other reports prepared for Board Meetings of the Company relevant to the determination of fair value.

(m)    Monthly management accounts for the Company.

(n)    Consolidated quarterly accounts for the Company from 17 April 2018 to 30 September 2023.

(o)    Monthly and/or quarterly financials for the Company including, where available, budgets, profit and loss statements, balance sheets, cash flow statements and any accompanying notes, commentary, reports or business plans.

(p)    Communications and Documents relating to the value of the Company's investments.

(q)    Communications and Documents supporting the values of loans and other receivables and liabilities of the Company.

(r)    Communications and Documents relating to the value of any real estate holdings of the Company including but not limited to, valuations, lease agreements with tenants, investment plans or proposals.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB LEGAL 110917158.1

(s)     Documentation of any off-balance sheet or non-operating assets and liabilities of the Company, including pension and foreign exchange liabilities.

(t)     Advice or analysis relating to corporation tax, withholding tax or other tax prepared by or for the Company's management.

(u)     Gross revenue before and after splits that are done in accordance with any intercompany agreements between the Company and any other entity for the period 17 April 2018 – 17 April 2023.

(v)     All intercompany agreements related to the split of revenues between Fang Holdings and related entities and the Company for all business segments which are relevant to the determination of the fair value of the Dissenters' shares in the Company as at the Valuation Date.

(w)     All communications with regards to changes in the agreement between Fang Holdings and the Company related to intercompany revenues splits which are relevant to the determination of the fair value of the Dissenters' shares in the Company as at the Valuation Date.

(x)     Segment level disclosure of the Company and Fang Holdings for each quarter of the period 17 April 2018 – 17 April 2023 including segment revenues, count of customers by segment, accounting assumptions for amortizing contracts and recognizing revenue by segment, count of new customers by segment, sum of new customers segment revenues, count of cancelled customers by segment, and sum of cancelled customers segment revenues, which are relevant to the determination of the fair value of the Dissenters' shares in the Company as at the Valuation Date.

(y)     Any communications or documentation relating to Fang Holding's purchase of the Company's shares, including the purchase of the Company's shares by Fang Holding for $5.99 in the years 2019 and 2020, or any other periods and the purchase of the Company's shares by any member of the Buyer's group (collectively "**Buyer Group Purchases of CIH**").

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

(z)    Communications and Documents including accounting values related to the provision of any liabilities from 17 April 2018 – 30 September 2023.

**Projections and valuations**

(aa)    Financial projections, forecasts, valuations, budgets, reports and models and supporting documentation for the Company including:

(i)    Internal long-term forecasts, budgets, projections, reports and models including source data and any supporting documentation;

(ii)    External forecasts, budgets, projections, reports and models relating to the Company's long-term plans including any supporting documentation;

(iii)    Any Communications, board minutes or other Documents relating to the Company's projections (for the avoidance of doubt including but not limited to those Documents and Communications previously produced by, provided to, or communicated between employees of the Company in the production and calculation of the projections sent to the Financial Adviser and any other sets of projections in existence); and

(iv)    Valuations or models of the Company (or any part of it, and whether for financial reporting, tax or investment appraisal purposes or otherwise) prepared by or for the Company, including any accompanying or supporting documentation and Documents provided to or obtained from any financial adviser in relation to any such valuation.

(bb)    Analyst, third party market and industry reports relevant to the Company and/or the markets in which the Company operates, including any Communications with and Documents produced by, provided to or received from any such analyst, third party and/or industry member.

**Operations and strategy**

(cc)    Internal Documents relating to market share and commission broken down by business

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

segment.

(dd)    Subscription contracts and agreements for the Company's top 50 customers during the period 17 April 2018 – 17 April 2023 organized by reporting segment.

(ee)    Service cancelation requests by any customer during the period 17 April 2018 – 17 April 2023.

(ff)    Internal Documents relating to any other potential acquisition of the Company or any part of it considered by the Company's management or Board.

(gg)    Agreements with the Company's major suppliers and any related Communications and Documentation.

(hh)    Communications and Documents relating to any significant changes to the business of the Company or industry related events that either had, or were perceived as having, a significant effect on the Company and/or its long term projections, including all Communications and Documents relating to regulatory issues in the Peoples Republic of China, market conditions relating to Chinese real estate companies, the impact of COVID-19 on the Company, and any foreign exchange issues including the potential depreciation of the Renminbi.

(ii)    Any Communications and Documents relating to the Company's post-Merger plans, including all valuation and analysis, relevant to any potential relisting or IPO of the Company, whether in the People's Republic of China or elsewhere, and whether or not the potential relisting or IPO was or may ultimately not be pursued.

(jj)    Communications and Documents relating to any (greater than 5% of assets) purchase or sale transactions of company assets that have occurred after the last reported period ending 30 September 2022.

(kk)    Communications and Documents relating to any material (greater than 5% of assets) debt or liability incurrences that have taken place after the last reported period ending 30 September 2022.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

(ll)    Communications and Documents relating to any with regards to any borrowing, lending, buying or selling transactions to or from related parties or to or from shareholders with ownership or control positions in excess of 5%.

(mm)    Communications and Documents relating to the status, operations and quarterly accounting entries for the Company's acquisition of Shouzheng Credit Rating Ltd. and China Index Credit Rating Ltd.

(nn)    Communications and Documents relating to any business that ceased operations and/or operation that was transferred to Fang from 17 April 2018 – 17 April 2023 which are relevant to the determination of the fair value of the Dissenters' shares in the Company as at the Valuation Date.

**Shares and shareholders**

(oo)    The number, terms and class of shares issued by the Company and any changes thereto, and the terms and conditions of any outstanding share options and any Documents or Communications relating to any potential stock buybacks.

(pp)    Any Communications produced by, provided to or received from the Company and/or any of its shareholders in relation to shareholders' interests and incentives and exercise of shareholders' voting rights or voting agreements, including all written objections to the 2020 Proposed Transaction, Proposed Transaction or the Merger received by the Company and any documents responding to, discussing, analysing or commenting on the objections received from shareholders.

(qq)    Communications and Documents relating to any actual or potential significant transactions of the Company's shares, including shares accumulated by the members of the Buyer Group prior to and/or in anticipation of the 2020 Proposed Transaction, Proposed Transaction or the Merger.

(rr)    Any Communications or Documents produced by, provided to, received from or communicated between directors, management or consultants of the Company in relation to the market price of the shares of the Company including, but not limited to, Documents

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

and Communications relating to the change in the market price of the shares of the Company between the listing of the Company's shares and the execution of the Merger Agreement, as well as whether the Company's market price was believed to have reflected the Company's intrinsic value.

(ss)    Any internal Communications or Documents in relation to the market price of the Company's shares by the Company's directors and senior officers.

(tt)    Communications and documents between the Company and its shareholders in relation to any purchase of the Company's shares by Fang Holdings or any member of the Buyer's Group, the 2020 Proposed Transaction, the Proposed Transaction or the Merger, including in relation to the shareholders' interests and incentives, including, without limitation, any Communications in relation to the exercise of shareholders' voting rights or voting agreements.

**The Buyer Group Purchases of CIH, 2020 Proposed Transaction, Proposed Transaction and the Merger**

(uu)    Any Communications and Documents in relation to the engagement of, and provision of advisory services in relation to the Buyer Group Purchases of CIH, 2020 Proposed Transaction, Proposed Transaction or the Merger.

(vv)    Any and all other Communications and Documents relating to the Buyer Group Purchases of CIH 2020 Proposed Transaction, Proposed Transaction and the Merger, to the extent not otherwise captured above.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

**Appendix 4**

**Categories of documents to be disclosed pursuant to paragraph 37 of the Order**

Documents which exist and are within the Dissenters' possession, custody or power and which were created or received between 17 April 2018 and 17 April 2023 which are relevant to the question of the fair value of the Dissenters' shares in the Company as at the Valuation Date and which fall within the categories set out below:

1.      All documents reflecting or relating to any valuations or similar analyses of the Company that the Dissenters prepared, reviewed, or considered, including but not limited to:

  (a)      All written documents, including Excel files, that set forth, summarise, or otherwise reflect valuation analyses of the Company or Company's shares;

  (b)      Any internal valuations of the Company or the Company's shares; and

  (c)      Any valuations of the Company or Company stock reviewed or considered by the Dissenters in connection with the above.

2.      A list of any communications that the Dissenters had, whether in writing, electronically or verbally, with any representative of the Company prior to the date of the merger in relation to the value of the Company or its shares.

3.      Confirmation of the date the Dissenters purchased any or all of their shares in the Company, including the method of purchase.

4.      A schedule setting out the history of the Dissenters 'trades in the shares of the Company.

5.      All documents, information and material issued or shared between the Dissenters ' investment manager and/or investment advisor and the Dissenters 'investment committee

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

for their consideration of the Company's go-private transaction including file notes of meetings, meeting agendas and all forms of written communications.

6.    All documents, communications, information and materials issued or shared between the Dissenters 'investment manager and/or investment advisor and the Dissenters' investment committee with other shareholders and their investment managers, investment advisors, investment committees of the Company and Fang Holdings on the Company and Fang Holdings

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB LEGAL 110917158.1

**Appendix 5**

**Disclosure Protocol pursuant to paragraph 13 of this Order**

A.    **Definitions**

1.    **Metadata** means data about data. In the case of an electronic Document, metadata is typically embedded information about the Document that is not readily accessible once the native electronic Document has been converted into an electronic image or paper Document, for example, the date on which the Document was last printed or amended. Metadata may be created automatically by a computer system (system metadata) or may be created manually by a user (application metadata).

2.    **MD5 Hash Value** means the Message Digest algorithm 5 which is used to provide a 128-bit hash or "digital signature" for electronic Documents and is generated upon the basis of

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB-LEGAL-110917158.1

the binary data of a file; where 2 or more items have the same MD5 Hash Value they are deemed to be duplicates.

3.    **Native File Format** means an electronic Document stored in the original form in which it was created by a computer software program.

4.    **Parent Document** means a Document with one or more attachment.  For example, an email is a parent Document and any Documents attached to the email are its attachments.

**B.    Preservation of Documents**

5.    The parties will take steps to preserve all potentially discoverable Documents, including the metadata of such Documents, and to ensure no metadata is altered during the preservation, collection, review of Documents or the disclosure process generally.

**C.    De-duplication**

6.    Stand-alone electronic Documents or entire Document families with the same MD5 Hash Value will be identified and any duplicates removed, except:

6.1    where duplicates are added to a party's List of Documents (as defined by paragraph 19) because they are family members of other Documents which are also disclosed.  Duplicates which are part of a family are not to be removed; and

6.2     scanned hard copy Documents.

7.    A deNIST filter will be applied to the Documents during processing to identify and remove files that are generally created by operating systems or applications and contain no user-generated information or data. The deNIST culling process identifies files found on the National Institute of Standards and Technology (NIST) list of Documents that hold no value for litigation purposes.

**D.    Format**

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

8.     Electronic Documents are to be provided in their Native File Format with all functionality, such as formulae and computations intact and enabled, and without watermarking, subject to:

    8.1.    Documents, other than excel spreadsheets, that have been redacted in accordance with this protocol, which Documents will be produced in Tagged Image File Format (**TIFF**) with the relevant .opt file and Document ID coding;

    8.2.    Excel spreadsheets, that have been redacted in accordance with this protocol, which Documents will be produced in a Native Format or near Native Format by using a software solution that retains the full functionality of the excel spreadsheet while applying redactions, such as Milyli, Evolver, or Redact Assistant.

9.     All PDF and TIFF Documents will be provided with corresponding Document level OCR text files where possible or shall otherwise be uploaded to the Data Room in a searchable format using optical character recognition.

10.    Each party will ensure Documents are decrypted, or that passwords are supplied. To the extent encryption for Documents cannot be successfully processed despite reasonable efforts, a slip sheet stating that the Documents cannot be decrypted shall be inserted in its place, including the metadata required, to the extent it can be reasonably extracted from the file in its encrypted form.

11.    Unless otherwise agreed or ordered by the Court, parties should not place any restrictions on Documents that prevent opposing parties from accessing them.

12.    Family-inclusive Documents will be uploaded to the Data Room with metadata load files containing the family attachment range to allow linking of Documents from the same family. Subject to any claim to privilege, or confidentiality and irrelevance, all family Documents are to be disclosed where only one member of a family Document is identified as relevant.

13.    The following applies in relation to attachments to emails:

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

13.1.   Any Document that is attached to or embedded within another Document is to be classed as an attachment (unless an excluded Document);

13.2.   Attachments must be listed as separate Documents; and

13.3.   In general, attachments will appear immediately after the Parent Document in the parties' Lists of Documents.

14.   All parties who have been given access to the Data Room shall have full access rights to the Documents therein, save that no party will have the ability to modify Documents in-situ within the Data Room; however, Documents shall be in a form in which the Dissenters can download any versions of the Documents (e.g. TIFF or native) either individually or (upon request to, and facilitated by, the Data Room service provider) as a bulk download and, in turn, modify outside of the Data Room.

**E.    Document Coding**

15.   Parties are required to code Documents in the Data Room by providing the following metadata detail for each Document, where such detail is reasonably available:

15.1.   Document ID: The document ID must be a unique reference and begin with "*CIHL*" for the Petitioner and *"D01-"*, *"D02-"*, etcetera for the Dissenters based on the order in which they appear in Appendix 1. The document ID should be 8 digits in length following the party indicator, utilising zeros if necessary, e.g. CIHL-00001234

15.2.   Parent document ID: If there is no Parent Document, leave this field blank.

15.3.   Last Modified Date: This should be the date and time last modified, or the manually coded date in the format DD/MM/YYYY, 00:00:00.

15.4.   Date Created: This should be the original date and time a file was created and may be the same as the Last Modified Date.

15.5.   Sent date: The date and time that the Document was sent in the case of an email and may be the same as the Date Created.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

15.6.    File name/subject/description: This may be the file name or subject line of an email or other descriptor.

15.7.    Document title: The extracted title of the Document.

15.8.    Document type: (ie. .pdf, .xls, .msg etc).

15.9.    Sender/Author: The name of the author of a Document or sender of an email.

15.10.   CC: The name of the recipient(s) of the Document in a CC. Use a semi-colon (;) symbol as the multi-value separator.

15.11.   BCC: The name of the recipient(s) of the Document in a BCC. Use a semi-colon (;) symbol as the multi-value separator.

15.12.   Recipient: The name of the recipient(s) of the Document. Use a semi-colon (;) symbol as the multi-value separator.

15.13.   Custodian and Duplicate Custodian: The name of the custodian from whom the Document was drawn, and the names of any other custodians who had duplicate copies of the Document.

15.14.   MD5 Hash Value: as defined.

15.15.   Contains Redactions: This will be a binary "Yes/No" code applying where the whole or part of a Document has been redacted.

15.16.   Reason for Redaction: This will identify the reason for the redaction using the following labels, as applicable:

Litigation privilege;

Legal professional privilege;

Without prejudice privilege; and

Irrelevant and confidential.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

16. When a Document is uploaded to the Data Room it shall contain the above information and such information should be visible to users of the Data Room.

**F.    Excluded Documents**

17. Temporary internet files, cookies and irrelevant gif files (ie. company logos) are to be excluded from searches and discovery (to the extent possible).

**G.    Withholding Disclosure - Privilege and Confidentiality**

18. Nothing in this Protocol will prevent a party from withholding Documents from production on the basis of any applicable Cayman Islands law.

19. If a claim of Cayman Islands law privilege, or confidentiality and irrelevance, is asserted over a portion of a Document only, that portion will be redacted and the Document produced.

20. The redacted sections of a Document are to be identified as such either by being blacked out or by otherwise being marked as having been redacted and stating the reason for the redaction in the List of Documents.

**H.    List of Documents**

21. In their List of Documents, the parties shall provide the following information to the extent that this information is reasonably available:

   21.1.   Document ID;

   21.2.   Parent document ID;

   21.3.   Last Modified Date;

   21.4.   Date Created;

   21.5.   Email sent date;

   21.6.   Conversion ID;

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

21.7.   Title/subject/description;

21.8.   Document type: (ie. .pdf, .xls, .msg etc);

21.9.   Sender/Author;

21.10.  Recipient;

21.11.  Contains Redactions;

21.12.  Reason for Redaction.

22.   Each party reserves the right to reasonably request further information from the disclosing party in relation to specific Document(s), other than those fields listed above.

23.   Each party's List of Documents will be ordered by family group, with attachments listed below Parent Documents.

24.   The parties' List of Documents will be provided in an excel spreadsheet format (.xls).

**I.   Variation**

25.   This protocol may be varied by agreement of the parties in writing or by order of the Grand Court of the Cayman Islands.

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

**Appendix 6**
**Schedule of Dates**

|  | Description | Order | Reference | Dates |
|---|---|---|---|---|
| 1 | Directions Order (the "**Order**") issued |  | - | 23 May 2025 |
| 2 | Company to inform Dissenters of total number of shares subject to the trial of the Petition | 55 | 15 days from filing of Order | 09Jun 2025 |
| 3 | Company to open an electronic Data Room and provide access to the Experts, the Appointees and the Dissenters, and their respective Representatives | 8, 10 | 14 days from date of Order | 06 Jun 2025 |
| 4 | Experts may start issuing information Requests to the Company | 21 | From the date of the upload of documents to the Data Room | 22 Jul 2025 |
| 5 | Company to upload Buyer Group documents pursuant to Appendix 3 | 11 | 90 days from date of Order | 21 Aug 2025 |
| 6 | Each party to appoint their respective Experts and to advise the other parties of the identities and contact details including email addresses of the respective Experts appointed | 3 | 42 days from date of Order | 04 Jul 2025 |
| 7 | Company to upload all additional documents pursuant to Appendix 3 | 12 | 60 days from date of Order | 22 Jul 2025 |

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

| | Description | Order | Reference | Dates |
|---|---|---|---|---|
| 8 | Company to upload all other materials not already covered in Appendix 3 | 12 | 60 days from the deadline date set in para 11 for Appendix 3 document uploads | 22 Sep 2025 |
| 9 | Dissenters to upload Appendix 4 and other documents to Data Room | 37 | In accordance to the deadline date specified in para 12 | 22 Sep 2025 |
| 10 | Company to upload written answers to the first Information Request batch | 23 | Within 21 days of the receipt of the first Information Request | - |
| 11 | Company to upload written answers to any further Information Request batches | 23 | Within 21 days of receipt of the Information Request | - |
| 12 | List of Questions and Topics to be provided to the Company | 32 | Not less than 21 days prior to the agreed date for the Management Meeting | - |
| 13 | Management Meeting | 26 | Within 28 days of a request by any of the Experts | 10 Mar 2026 |
| 14 | Cut-off date for final Management Meeting | 27 | 42 days prior to the exchange of Expert Reports | - |
| 15 | Recording and transcript of Management Meeting to be circulated by the Company and uploaded to the Data Room | 33 | Within 14 days of the relevant Management Meeting | - |
| 16 | Cut-off date for either party to provide comments on any errors in the transcript from a Management Meeting | 34 | Within 21 days of uploading the transcript to the Data Room | - |
| 17 | Notified party to confirm if they agree or disagree with errors in Management Meeting transcript identified. | 35 | Within 14 days of being notified of the purported errors | - |
| 18 | Cut-off date for Company, and if the Company fails to, the Dissenters, to circulate and | 35 | Within 7 days of the Dissenters confirming if they agree or | 05 Sep 2025 |

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB LEGAL 110917158.1

| | Description | Order | Reference | Dates |
|---|---|---|---|---|
| | upload an updated transcript to the Data Room | | disagree with the errors identified by the Company | |
| 19 | Service of Company's factual evidence with English translations | 39 | 105 days from date of Order | 04 Nov 2025 |
| 20 | Service of Dissenter's factual evidence in response | 39 | No later than 60 days of service of the Company's factual evidence upon them | 25 Nov 2025 |
| 21 | Service of Company's factual evidence in reply with English translations | 39 | No later than 21 days of service of the Dissenters' evidence upon it | 24 Mar 2026 |
| 22 | Cut-off date for final Information Request from Experts to the Company | 25 | 28 days prior to the exchange of Industry Expert Reports | 21 Apr 2026 |
| 23 | Experts to exchange their respective Expert Reports | 41.3 | Within 21 weeks from the date of the Company's reply factual evidence pursuant to paragraph 39 | 12 May 2026 |
| 24 | Experts discuss differences | 42 | Within 21 days of the exchange of Expert Reports | 09 Jun 2026 |
| 25 | Experts to issue their Joint Memorandum | 43 | Within 28 days of the Experts' Meeting | 04 Aug 2026 |
| 26 | Experts to exchange their respective Supplemental Reports (if any) | 44 | Within 56 days of the Joint Experts' Memorandum | - |
| 27 | Cut-off date for providing notice to any deponent of factual evidence for cross-examination at trial | 40 | 14 days before the CMC or, if the CMC is dispensed with or the date of the CMC is fixed less than 14 days prior to the hearing of the CMC then the deadline shall be 30 days prior to trial | - |
| 28 | Case Management Conference | 49 | Earliest convenient date after the deadline for exchange of any Supplemental Reports, or on the earliest convenient date once it is | First Available Date After 15 September 2026 |

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AR-LEGAL-110917158.1

| | Description | Order | Reference | Dates |
|---|---|---|---|---|
| | | | confirmed that no Supplemental Reports will be exchanged | |
| 29 | Trial | 54 | First available date after 15 September 2026 subject to the availability of counsel, for 4 weeks | |
| 30 | Each party to appoint their respective Interest Experts (if necessary) and to advise the other parties of the identities and email addresses of the respective Interest Experts appointed | 5, 6 | Within 28 days of the date of the Order made upon the Court's determination of the fair value of the Dissenters' shares in the Company | |

This Order was filed by Conyers Dill & Pearman LLP, Attorneys-at-Law for the Petitioner, whose address for service is SIX, 2nd Floor, PO Box 2681, Grand Cayman KY1-1111 Cayman Islands

AB LEGAL 110917158.1