UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 507 SUMMIT LLC and KOA CAPITAL L.P. | Case 25-mc-235-KHP |
| Applicants | |
| v. | |
| BALANCE LAW PLLC dba Balance Law Firm | |
| Respondent | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF APPLICATION
FOR ORDER OF JUDICIAL ASSISTANCE UNDER 28 U.S.C. § 1782**

Jeffrey Chubak
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com
Attorneys for Applicants

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ..................................................................................................................... 1

I.      THE STATUTORY REQUIREMENTS ARE SATISFIED ................................... 1

II.     THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF § 1782 DISCOVERY ...... 6

        A.      Whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad" ............................................................................. 6

        B.      "The receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" .......................................................... 7

        C.      Whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" ............... 8

        D.      Whether the request is "unduly intrusive or burdensome" ................................. 9

                1.      Whether the Requested § 1782 Discovery Presents Undue Burden or Cost ............................................................................................. 9

                2.      Whether the Requested § 1782 Discovery is "Duplicative" .................... 10

III.    RESPONDENT'S REMAINING ARGUMENTS, WHICH HAVE NO BEARING ON THE STATUTORY REQUIREMENTS OR DISCRETIONARY FACTORS, ARE MERITLESS ............................................................................................... 10

        A.      Whether the Requested § 1782 Discovery is Abusive or Retaliatory .................. 10

        B.      Whether the Requested § 1782 Discovery is the Product of Collusion ................. 11

        C.      Whether Applicants Refused to Negotiate in Good Faith ................................... 12

                1.      Unwillingness to Accept Respondent's Offer to Produce Certain Documents .................................................................................... 12

                2.      Unwillingness to Engage in Discussions to Combine Two Separate Legal Proceedings ................................................................................. 12

CONCLUSION ............................................................................................................... 12

WORD COUNT CERTIFICATION ....................................................................................

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Oasis Investments II Master Fund Ltd. v. Mo*,
    82 Misc.3d 1242(A) (Sup. Ct. N.Y. Co. 2024) .................................................................. 7

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017) ............................................................................................ 1

*FourWorld Event Opportunities, LP v. Dodds*,
    2022 WL 22617356 (D. D.C. Feb. 14, 2022) ................................................................... 8

*Platinum Partners Value Arbitrage Fund L.P.*,
    583 B.R. 803 (Bankr. S.D.N.Y. 2018) ............................................................................. 8

*In re Kingstown Partners Master Ltd.*,
    2022 WL 1081333 (S.D.N.Y. April 8, 2022) ................................................................... 8

*In re Hopkins*,
    2020 WL 733182 (N.D. Cal. Feb. 13, 2020) .................................................................... 9

*In re Google, Inc.*,
    2014 WL 7146994 (N.D. Cal. Dec. 15, 2014) .................................................................. 9

*In re Veiga*,
    746 F. Supp. 2d 8 (D. D.C. 2010) .................................................................................... 9

*In re Application of CBRE Glob. Invs. (NL) B.V.*,
    2021 WL 2894721 (S.D.N.Y. July 9, 2021) ..................................................................... 7

*In re Batbold*,
    2023 WL 2088524 (S.D.N.Y. Feb. 17, 2023) ................................................................... 7

*Kiobel by Samklakden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018) ............................................................................................ 7

**Cases**

CPLR 2308 ................................................................................................................................ 11

28 U.S.C. § 1782 ............................................................................................................... passim

Applicants 507 Summit LLC and KOA Capital L.P. (together, "Applicants") submit this reply memorandum of law in further support of their application for an order of judicial assistance authorizing them to take document discovery of respondent Balance Law PLLC dba Balance Law Firm ("Respondent") for use in an appraisal proceeding pending in the Grand Court of the Cayman Islands regarding the value of China Index Holdings Limited ("CIH").

## ARGUMENT

## I.    THE STATUTORY REQUIREMENTS ARE SATISFIED

The sole contested statutory requirement is whether the discovery at issue is "for use" in the underlying appraisal proceeding.  (ECF #16, "Opposition Br." at 4-5.)

This factor entails consideration of (1) "the practical ability of an applicant to place a beneficial document before a foreign tribunal" (*In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017)); and (2) whether the documents sought are "minimally relevant to the foreign proceeding" (*In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024) (cited in Opposition Br. at 4-5)).

Respondent effectively concedes the former and focuses on the latter.

As to relevance, Respondent focusses on certain transactions/events[1] at issue in the Fang derivative action pending in New York County Supreme Court, Index  652607/2023 ("Fang Derivative Action") conceding that one of these transactions/events is relevant (the 2022 take private transaction) but argues that the others are not.

 As described in the Directions Order, at issue in the underlying appraisal proceeding is the fair value of Applicants' shares in CIH  (Reply Chubak Decl. Exhibit 1, "Directions Order" ¶¶2, 11. See also Cecere Decl. ¶¶4, 6.)

---

[1] ECF #17 ("Liu Decl.") ¶16 lists four transactions/events while ¶27 states that there are five.

The proposed subpoena seeks information on the 27 issues/categories identified (ECF #1-1) in a chart Respondent populated (Fang Derivative Action NYSCEF #381 ¶32) "to assist Plaintiffs … in their Motion for Sanctions and providing the Bates Numbers of documents responsive to each and every category."[2]  For convenience, these issues are summarized by the four groupings below:

| Issue Group | Relevant Issue/Category Numbers |
|---|---|
| 1. CIH Spin-off | 1,2 |
| 2. Valuation of CIH & related Fang purchase agreement for CIH shares | 3,4,5,6,7,8,9,18,21,22 |
| 3. 2021-22 Insider purchases of Fang & CIH Equity while Fang wasn't filing | 10,12,13,17,26,27 |
| 4. The 2022 Take Private Transaction | 14,15,16,24,25 |

Generally speaking, the chart (included in ECF #1-1) seeks documents concerning:

- CIH Spin-Off.  The spin-off of CIH in 2019 (discussed at ECF #4, "Moving Br." at 1), including the impetus therefor (Category #1) and selection of independent directors in connection therewith (Category #2).  The spin-off is relevant because a determination was made at the time regarding the split of operations and profits between Fang and CIH.  (Fang Form 20-F filed 5/27/20 at 95-98.)

- Valuation of CIH & related Fang purchase agreement for CIH shares ("Fang Purchase Agreement"). Fang's post-spin-off purchases of CIH equity for $5.99/share and related valuation information including:

  o The selection of independent directors to review the Fang Purchase Agreement.(Category #3).

  o The decision for affiliates of Mr. Mo[3] to enter into the Fang Purchase Agreement (Category #4).

---

[2] The language of the table and the language used by Respondent are not consistent. The table identifies the items as issues while Respondent's opposition papers refer to them as categories.

[3] For more detailed discussion of the CIH equity purchases, see Evenstar's winding-up petition against Fang (S.D.N.Y. Case 20-mc-418 ECF #3-2 ¶¶65-90, discussed in Moving Br. at 4) and the

- o The rationale for the $5.99 price (Category #5).

- o The selection of China Enterprise Appraisals ("CEA") to value CIH. (Category #6).

- o CEA's conclusions (Category #7).

- o Fang's open market purchases of CIH equity (Category #8).

- o Fang's exercise of the option in the Fang Purchase Agreement (#9)

- o Communications between directors regarding the Fang Purchase Agreement (Category #18).

- o Communications with affiliates regarding the $5.99 purchase price. (Category #21).

- o Communications from Fang to CEA regarding CIH value conclusions (Category #22).

- <u>2021-22 Insider purchases of Fang & CIH Equity while Fang was not filing</u>. Purchases by affiliates of Mr. Mo and Richard Dai, ACE and True Knight, of Fang and CIH equity interests from various sellers in June 2021-May 2022 (Category #12) after Fang ceased making SEC filings, including:

- o The decision to stop filing Fang's SEC filings. (Category #10).

- o The purchase terms for said transactions (Category #13).

- o Communications with any of the sellers while Fang was not filing disclosures (Category #26).

- o Hiring MaloneBailey (auditor) and interviews with other audit firms (Category #17, #27) as needed for SEC filing compliance.

- <u>2022 Take Private Transaction</u>. The CIH take private transaction consummated in 2022, including:

- o The transaction's rationale (Category #14).

---

complaint filed in the Fang Derivative Action (NYSCEF #1, "Fang Derivative Complaint" ¶12 & ¶19).

- The selection of Roth Capital Partners (Category #15) and communications regarding CIH valuation work (Category #24).

- The selection/inclusion of the buyer group consortium members (Category #16), and communications with same (Category #25), probative of whether General Atlantic or Evenstar were invited to prevent a bidding war (CIH Form 13E-3/A filed 2/24/23 at 29, 31) and resolve a winding up petition.

Each of these is relevant to the valuation issue to be determined in the underlying appraisal proceeding.  Indeed, these matters are by and large specifically identified as relevant according to the Directions Order, which (¶11) defines the scope of disclosure as all matters "relevant to the determination of fair value" from the "5-year period ending on the Valuation Date, 17 April 2023" and directs production of documents listed in "Appendix 3" which includes the following topics similar to those described above:

| Topics that are Subject of Proposed Subpoena | Substantially Similar Topics Listed in Appendix 3 |
|---|---|
| Fang's Purchases of CIH Equity | Documents regarding "Corporate and financial documents" (at 34-36), including "any communications or documentation relating to Fang Holding's purchase of the Company's shares, including the purchase of the Company's shares held by Fang Holding for $5.99 in the years 2019 and 2020, or any other periods and the purchase of the Company's share by any member of the Buyer's group (collectively 'Buyer Group Purchases of CIH')"; and documents regarding "The Buyer Group Purchases of CIH" (at 39-40).[4] |
| Materials relevant to the valuation of CIH | Models, Budgets, Projections, Valuation, Board Communications, Analyst reports, Third Party reports and all other supporting materials relevant to determining the value of CIH (at 36). |
| 2022 Take-Private Transaction | Documents regarding "[t]he Company, the Special Committee and their advisors" (at 31-33), "Buyer Group and potential purchasers" (at 33-34), "the Merger" (at 39). |

The matter of the 2021-2022 Purchases of Fang Equity is also plainly relevant because the value of CIH depends on the value of Fang given the large sum owed to CIH by Fang. (CIH Form

---

[4] ACE and True Knight are members of the Buyer Group. (CIH Form 13E-3/A filed 2/24/23 at 31.)

6-K filed 9/28/21, Exhibit 99.7.)  CIH appears to have hidden this value from its balance sheet using false provisioning premised on the argument that Fang was not creditworthy.  (CIH Form 20-F filed 4/26/22 at 87.)[5]  While CIH claimed Fang was insolvent, Mr. Mo and his nephew were both purchasing Fang stock through their affiliates and Fang purchased all of CIH without the assistance of borrowing or equity issuances. More information is needed to reconcile the apparent contradiction between the representations of CIH about Fang's solvency and Fang's actual financial position during time that insiders were purchasing Fang stock.

Notably, Fang Derivative Complaint ¶12 alleges Fang stopped making SEC filings to depress the trading prices of Fang and CIH equity so Mr. Mo and his nephew could purchase blocks of Fang and CIH equity at artificially depressed prices.

Respondent makes an argument that only documents concerning the merger transaction are relevant to these proceedings. (Liu Decl. ¶17.)  The Directions Order clearly and plainly refutes this by identifying as relevant materials not related to the merger transaction but nonetheless relevant to the determination of the fair value of CIH shares.  These include:

- CIH financial documents April 17, 2018-September 30, 2023 including financial performance, budgets, valuation and board meeting minutes and agendas. (Directions Order, Appendix 3 at 33-36.)

- Intercompany agreements between Fang and CIH. (Id. at 34 ¶v.)

---

[5] The provision is expressly referenced at Directions Order, Appendix 3 at 33 ("Communications and Documents involving the Company's auditors, KPMG Huazhen LLP and MaloneBailey, LLP [referenced in Subpoena Category #17], including the creation and write-down of assets or liabilities between related parties, including between the Company and Fang Holdings" from 2018-23).

- All communications with regards to changes in agreements between Fang and CIH (Id. at 35 ¶w.)

- "Segment level disclosure of the Company [CIH] and Fang Holdings for each quarter of the period 17 April 2018 - 17 April 2023 including segment revenues, count of customers by segment, accounting assumptions for amortizing contracts and recognizing revenue by segment, count of new customers by segment, sum of new customers segment revenues, count of cancelled customers by segment, and sum of cancelled customers segment revenues, which are relevant to the determination of the fair value of the Dissenters' shares in the Company as at the Valuation Date." (Id. at 35 ¶x.)

By approving the Directions Order, the Cayman court accepts that discovery should include a large and varied corpus of materials dating back as far as 2018 that has no bearing on the merger, but that does have bearing on determining the fair value of CIH.

Further support for the relevancy of the Applicant's document request can be found in the Cayman court's ruling in *Qunar Cayman Islands Limited v. Athos Asia Event Driven Master Fund* (Reply Chubak Decl. Exhibit 2) ¶32 ("disclosure of 'all documents that are relevant to fair value', on a 'catch-all basis', after production of specific classes of documents agreed, 'is the usual order'").

## II.    THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF § 1782 DISCOVERY

### A.    Whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"

Respondent admits (Opposition Br. at 5) this factor is satisfied. As previously noted (Moving Br. at 7, citing the CIH Appraisal Petition including its caption identifying the parties), Fang is not a party to the underlying appraisal proceeding and is not even mentioned in it.  No

authority is cited to support Respondent's suggestion that Fang should nevertheless be treated as a party to the underlying appraisal proceeding, whether because Applicants commenced a separate winding-up proceeding against Fang under Cayman Islands Companies Act Part 5, or because CIH is in custody of certain documents concerning Fang, or because of intercompany transactions between the two entities.  Rather, the law is clear that the *Intel* discretionary factor considers only whether the § 1782 respondent (or its client, if the § 1782 respondent is a law firm) is an actual party to the underlying Cayman proceeding for which the § 1782 discovery is sought.  *Kiobel by Samklakden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (relevant inquiry is whether "the real party from whom documents are sought [here, Fang] is involved in foreign proceedings" for which § 1782 discovery is sought); *In re Application of CBRE Glob. Invs. (NL) B.V.*, 2021 WL 2894721, at *10 (S.D.N.Y. July 9, 2021) (granting § 1782 application directed towards affiliate of party to foreign proceeding); *In re Batbold*, 2023 WL 2088524, at *5 n.1 (S.D.N.Y. Feb. 17, 2023) (similar).[6]

## B.    "The receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"

Respondent cites *In re Qunar Cayman Islands Ltd.* [2017(1)] CILR 1 for the proposition that Cayman "procedures in appraisals … limit discovery to expert exchanges."  (Opposition Br. at 6.)

---

[6] None of the other concerns raised in *Kiobel* are implicated: the principle articulated in *Fisher v. U.S.*, 425 U.S. 391 (1976) (discovery may be limited "if documents unreachable in a foreign country became discoverable because the person holding the documents sent them to a lawyer in the United States for advice as to whether they were subject to production") is inapplicable; the state court determined Fang is subject to New York jurisdiction, *Oasis*, 82 Misc.3d 1242(A); and authorizing the requested § 1782 discovery would not present risk of "undermin[ing] confidence in protective orders".

First, no evidence is provided for this, no copy of the cited *Qunar* decision is attached to the opposition papers making Respondent's argument hearsay about Cayman law made by New York counsel.

Second, this characterization of the scope of disclosure is contrary to that described in the *Qunar* decision quoted above. To make an informed valuation determination, Cayman courts rely on evidence surfaced through foreign discovery including § 1782 discovery. Examples of Cayman courts relying on § 1782 discovery to produce evidence for Cayman proceedings include *In re New Frontier Health Corporation* (Reply Chubak Decl. Exhibit 3), *In re 51JOB, Inc.* (id. Exhibit 4) and *Phoenix Meridian Equity Limited v. Lyxor Asset Mgm't S.A.* (id. Exhibit 5, "*Phoenix Meridian*"), among others.

Third, United States courts have recognized the receptivity of Cayman courts to § 1782 discovery. *FourWorld Event Opportunities, LP v. Dodds*, 2022 WL 22617356, at *1 (D. D.C. Feb. 14, 2022) ("Ingrid Mangatal, a retired judge of the Grand Court of the Cayman Islands … [testified] that Cayman courts have held that discovery in appraisal proceedings encompasses 'anything' that 'could lead an expert on a 'train of inquiry' regarding an issue relevant to valuation'") (declaration available at 22-mc-18 ECF #5, the "Mangatal Decl."). *See also Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures"), *In re Kingstown Partners Master Ltd.*, 2022 WL 1081333, at *5 (S.D.N.Y. April 8, 2022) (collecting cases).

### C.     Whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"

"Judge Mangatal says that 'Cayman island courts expect the parties to obtain the evidence they believe is necessary to prosecute their case. Thus, there is no requirement to obtain permission from a Cayman Islands court before seeking relevant evidence abroad." *FourWorld*, 2022 WL

22617356, at *2 (citing Mangatal Decl. ¶66). Indeed, there is no restriction even when such discovery may duplicate that in the underlying action. E.g. *Phoenix Meridian* ¶29 ("As the depositions are to be regarded as part of the discovery process … they may not be restrained simply for being duplicative in and of themselves").

That Respondent has not identified any foreign proof gathering restrictions weighs in favor of Applicants. *E.g. In re Hopkins*, 2020 WL 733182, at *4 (N.D. Cal. Feb. 13, 2020) (quoting *In re Google, Inc.*, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014)) ("Courts have found that his factor weighs in favor of discovery where there is 'nothing to suggest that [applicant] is attempting to circumvent foreign proof-gathering restrictions"); *In re Veiga*, 746 F. Supp. 2d 8, 24 (D. D.C. 2010) (evaluating this factor based on lack of evidence).

### D.    Whether the request is "unduly intrusive or burdensome"

#### 1.    Whether the Requested § 1782 Discovery Presents Undue Burden or Cost

Notwithstanding that the subject documents are clearly identified by Bates number, Respondent claims their production would impose an undue burden in that it would "require[e] review and production of confidential materials protected in the State Court Action." (Opposition Br. at 8.)

Applicants, however, are amenable to entering into a confidentiality/protective order, to preserve potential confidentiality of items designated as such under the state court commercial division form confidentiality order. Further, Respondent's argument implies a confidentiality review has already been done, presumably before the subject documents were produced to the Fang derivative plaintiffs, which would eliminate any burden.

Respondent makes the unsupported claim that compliance with the proposed subpoena would result in undue burden or cost, because the request asks for a "a significant portion of 300,000 pages of documents produced." (Liu Decl. ¶30.) This claim is unsubstantiated. Even if

it were true, page count is not a meaningful measure of burden given that the documents requested, as Respondent concedes, have already been produced and exist in digital form. There is no more burden to uploading a file of 1,000 pages than there is uploading a file of 10 pages.

> 2.    Whether the Requested § 1782 Discovery is "Duplicative"

Respondent's claim that discovery should be denied as "duplicative of what Applicants will obtain directly in Cayman" (Liu Decl. ¶20; see also id. ¶19) likewise fails. Cayman law does not consider risk of duplication cause for restraining information requests. *Phoenix Meridian* ¶29 (quoted above).

Furthermore, the testimony (Liu Decl. ¶¶19-20) about the supposed progress of discovery in the underlying appraisal proceeding is not only inadmissible hearsay, but also false in that CIH is already in default of discovery obligations under the Directions Order. (Reply Chubak Decl. Exhibit 6.)

Lastly, if Respondent honestly believes the requests at issue herein would yield documents that are duplicative of what the Applicants will ultimately receive, then Respondent concedes the subject documents are relevant. Conversely, if Respondent does not honestly believe that the Applicants will ultimately receive the documents sought herein, then the Respondent makes a bad faith argument that the Applicants have no "real need for this production". Respondent is in the awkward position of arguing for two contradictory claims.

## III.    RESPONDENT'S REMAINING ARGUMENTS, WHICH HAVE NO BEARING ON THE STATUTORY REQUIREMENTS OR DISCRETIONARY FACTORS, ARE MERITLESS

### A.    Whether the Requested § 1782 Discovery is Abusive or Retaliatory

Respondent claims that the proposed subpoena is "abusive" and made with "retaliatory intent" (Liu Decl. ¶¶21-30), in response to Respondent's state court subpoena (ECF #17-1).

Putting aside that this does not address intrusion, the claim of abuse-based-on-retaliatory intent lacks substantive support:

- No evidence is provided as to intent.

- The subpoena Respondent issued was only to 507 Summit LLC, not KOA Capital L.P. Respondent does not claim KOA Capital L.P. is also acting out of retaliatory intent. Empty claims regarding one party should not block another party from the right to information that party would otherwise be entitled.

- Since the state court subpoena was served after the deadline for fact discovery,[7] the subpoena is wholly without merit.  There is no need for 507 Summit LLC to respond to let alone retaliate for a non-meritorious subpoena.

- The proposed subpoena cannot be considered overly broad or "abusive" given that it identifies the documents sought by Bates number.

- The claim (Opposition Br. at 2) that Justice Borrok "authorized" the subpoena is false. That would imply a CPLR 2308(a) judicial subpoena, yet the subpoena is not returnable in a court under CPLR 2308(b).  No evidence is otherwise cited to show pre-approval of the subject subpoena or the discovery sought therein.

**B.      Whether the Requested § 1782 Discovery is the Product of Collusion**

Respondent argues that the proposed subpoena is the product of "collusion" between the Applicants, the Fang Derivative Action plaintiffs and their counsel, Reid Collins & Tsai. If this were true, then Applicants would have simply named Reid Collins & Tsai as respondent in this § 1782 proceeding and avoid the cost of the instant litigation.

---

[7] See Fang Derivative Action NYSCEF #411 at 4.  No extension has been requested and there has been no indication Justice Borrok is amenable to an extension.

C.    **Whether Applicants Refused to Negotiate in Good Faith**

        1.    <u>Unwillingness to Accept Respondent's Offer to Produce Certain
Documents</u>

The Applicants response to Respondent's offer was to note that the offer was not responsive
to the information requested and to ask (Reply Chubak Decl. Exhibit 7) if Respondent would flag
documents in the proposed subpoena that Respondent/Fang did not wish to produce and why.  (Id.)
This question received no response.

        2.    <u>Unwillingness to Engage in Discussions to Combine Two Separate Legal
Proceedings</u>

Respondent incorrectly claims that Applicants "refused to engage" in discussions herein
about Respondent's subpoena in the Fang Derivative Action. (Liu Decl. ¶26).  The Applicants
expressed a willingness to engage on both subpoenas separately given each they are unrelated and
must be evaluated independently and on their own merits.  (Reply Chubak Decl. Exhibit 7.)

**<u>CONCLUSION</u>**

The § 1782 application should be granted.


Dated:  New York, New York                           Amini LLC
        August 22, 2025

                                          /s/ Jeffrey Chubak
                                          Jeffrey Chubak
                                          131 West 35th Street
                                          12th Floor
                                          New York, NY 1001
                                          (212) 490-4700
                                          jchubak@aminillc.com
                                          Attorneys for Applicants

12

## **WORD COUNT CERTIFICATION**

I certify under penalty of perjury that the foregoing document has 3,294 words as calculated using the word-count feature of the word-processing program used to prepare the same, and so complies with Local Civil Rule 7.1(c).  Executed this 22nd day of August, 2025.

/s/ Jeffrey Chubak_____