```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/26/2026
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

507 SUMMIT LLC, et al.,

                         Applicants,

            -against-

BALANCE LAW PLLC *d/b/a* BALANCE LAW
FIRM.

                         Respondent.

25-MC-235 (KHP)

**OPINION AND ORDER ON APPLICATION FOR
DISCOVERY FOR USE IN A FOREIGN
PROCEEDING**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

507 Summit LLC and KOA Capital L.P. (collectively, the "Petitioners"), submitted an

application requesting that the Court, pursuant to 28 U.S.C. § 1782, authorize Petitioners to

issue subpoenas demanding that Balance Law PLLC d/b/a Balance Law Firm ("Respondent"),

produce documents for use in an appraisal proceeding in the Grand Court of the Cayman

Islands ("Cayman Court"), brought under Section 238 of the Cayman Islands Companies Act, to

determine the fair value of Petitioners' Class A ordinary shares in China Index Holdings Limited

("CIH"). Respondent objects to the application. For the reasons set forth below, after

consideration of the parties' submissions, Petitioner's application for discovery is GRANTED, but

the scope of the discovery is modified as set forth below.

**BACKGROUND**

**1. The Parties**

Petitioners are investment entities that were holders of Class A ordinary shares of CIH, a

Cayman Islands exempted company. Petitioners acquired their interests through American

Depositary Shares and later converted those interests into Class A ordinary shares. Petitioners

dissented from a take-private transaction involving CIH and thereafter commenced an appraisal proceeding in the Grand Court of the Cayman Islands pursuant to Section 238 of the Cayman Islands Companies Act, seeking a judicial determination of the fair value of their shares.

Respondent Balance Law PLLC ("Balance Law") is a New York law firm that represents Vincent Tianquan Mo ("Mo") and Richard Jiangong Dai ("Dai") – current and former controlling persons of Fang Holdings Limited ("FHL") – in a shareholder derivative action pending in the Supreme Court of the State of New York, New York County.  Respondent is not a party to the Cayman appraisal proceeding.

**B. CIH, FHL, and the Take-Private Transaction**

CIH was originally formed as a subsidiary of FHL and was spun off as a separate publicly traded company in 2019.  Following the spin-off, FHL and CIH continued to maintain significant operational and governance overlap, including shared directors and management.  At all relevant times, Mo exercised effective voting control over both FHL and CIH through his ownership interests and affiliated entities.

FHL retained a substantial equity position in CIH following the spin-off, including both Class A and Class B ordinary shares, with the latter carrying enhanced voting rights.  As a result, FHL and Mo retained significant influence over CIH's strategic direction and any extraordinary corporate transactions involving the company.  In November 2020, General Atlantic proposed acquiring CIH at a price materially higher than the price ultimately paid to minority shareholders.  That proposal was not pursued.  Instead, in August 2022, FHL proposed a take-private transaction at a substantially lower valuation.  CIH's board subsequently formed a special committee to evaluate the proposal.  In October 2022, FHL, Mo, and General Atlantic

entered into a consortium agreement pursuant to which the consortium renewed the take-private proposal at a price of $0.84 per share.  After further negotiations, the consortium increased the consideration to $1.00 per share, which it characterized as its best and final offer.  The special committee approved the transaction on December 22, 2022, and the CIH board approved the merger the same day.  The transaction closed in April 2023.

Petitioners dissented from the merger and invoked their appraisal rights under Cayman law.

### D. Subsequent Litigation in the Cayman Islands and New York

Petitioners commenced an appraisal proceeding in the Grand Court of the Cayman Islands seeking a judicial determination of the fair value of their CIH shares as of the effective date of the merger.  Under Cayman law, appraisal proceedings are largely expert-driven.  *See generally In the matter of Homeinns Hotel Group* (unreported Aug. 12, 2016) (explaining that the Cayman Court is not a specialist valuation body and must therefore rely on expert evidence from experienced valuers who require access to relevant historical data, documents, and company information to assist them in determining fair value).  Discovery in the Cayman appraisal proceeding is ongoing, and CIH is expected to produce documents to Petitioners pursuant to the Cayman Court's procedures.  The Cayman Court cannot compel a non-party to provide evidence for an appraisal proceeding but permits the submission of evidence obtained through foreign judicial assistance, including evidence obtained pursuant to 28 U.S.C. § 1782.  *See In re 507 Summit*, No. 23 Misc. 427 (KHP), 2024 WL 81842, at *2 (S.D.N.Y. Jan. 8, 2024) (Parker J.,) (granting Petitioner's Section 1782 application for discovery in the same foreign proceeding at issue here).  "In assessing the fair value of the shares, the Cayman Court will

evaluate the fairness of the process that lead to the board's approval of the transaction and may consider objective valuations of the shares and the process by which the special committee and board concluded that the price of $1 per share was appropriate." *Id.*, at *1.

Separately, a shareholder derivative action is pending in New York Supreme Court against Mo, Dai, and affiliated entities, asserting claims for breach of fiduciary duty and related misconduct arising out of several transactions involving FHL and CIH. *See Oasis Inv.'s II Master Fund Ltd. V. Mo et al*., Sup. Ct., Com. Div., No. 652607/2023. Those transactions include the CIH spin-off, FHL's purchase of CIH shares from affiliated entities, FHL's delisting from the New York Stock Exchange, insider share acquisitions following that delisting, and the CIH take-private transaction.

Respondent represents the defendants in the New York action. In that proceeding, the defendants have produced more than 300,000 pages of documents pursuant to state-court discovery orders. As part of discovery disputes in the New York action, Respondent produced a chart identifying categories of documents responsive to issues raised by the derivative plaintiffs. (NYSECF No. 380) The court in the New York action has authorized non-party discovery directed to minority shareholders, including Petitioners, concerning their understanding of the challenged transactions. (ECF No. 16 ("Resp. Mem."), at 2) Pursuant to that authorization, Respondent served a subpoena on Petitioners seeking documents and communications relating to their investments and litigation activities specifically for the New York action. (*Id.*) Shortly thereafter, Petitioners filed the instant application. (*Id.*)

**THE PROPOSED SUBPOENAS**

Petitioners filed the present application under 28 U.S.C. § 1782 seeking authorization to subpoena Respondent for documents identified in the discovery chart produced in the New York derivative action. Petitioners assert that the requested documents are relevant to determining the fair value of CIH shares in the Cayman appraisal proceeding, including evidence bearing on valuation, transaction process, and alleged suppression of CIH's market price.

The requested discovery is not framed as traditional document requests drafted specifically for the Cayman proceeding. Instead, Petitioners seek production of a defined universe of documents previously produced by FHL and its affiliates through Respondent in connection with discovery in the New York shareholder derivative action.

The document subpoena on Respondent seeks production of all documents identified by Bates number in the discovery chart produced by Balance Law in the New York shareholder derivative action and filed as NYSCEF No. 380. These documents include:

- Documents concerning the impetus for the spin-off of CIH;
- Documents concerning the selection of independent directors or committee members for the CIH spin-off;
- Documents concerning the selection of independent directors or committee members for the approval of CIH buybacks;
- Documents concerning the decision for Next Decade and Media Partner to enter the 2019 CIH Share Purchase Agreement with Fang;
- Documents concerning the rationale for the 2019 CIH Share Purchase Agreement's $5.99 CIH per share option price;
- Documents concerning any alleged suppression, manipulation, or distortion of CIH's market price prior to the merger;
- Documents concerning the selection of the China Enterprise Appraisals ("CEA") and the evaluation of other firms mentioned in email correspondence for the valuation of the 2019 CIH Share Purchase Agreement;
- Documents concerning CEA's CIH value conclusion;
- Documents concerning Fang's decision to drive up the open market price of CIH in the lead up to the CIH Share Purchase Agreement option exercise in December 2019 and June 2020 through a series of open market purchases;

- Documents concerning Fang's decision to exercise its CIH Share Purchase Agreement option in both December 2019 and June 2020;
- Documents concerning the decision not to file Fang's annual SEC filings for the years 2020 onward;
- Documents concerning the decision not to file SEC filing extension requests;
- Documents concerning Ace's and True Knight's purchases of Fang and CIH interest from eleven sellers through over 20 transactions in June 2021 through May 2022 while Fang was no longer making its annual securities filings;
- Documents concerning the timing and purchase price amounts for Ace's and True Knight's purchases of Fang's and CIH interest from eleven sellers through over 20 transactions in June 2021 through May 2022 while Fang was no longer making its annual securities filing;
- Documents concerning the rationale for the CIH take private transaction;
- Documents concerning the selection of Roth Capital Partners to provide a valuation of CIH for the CIH take private;
- Documents concerning hiring Malone Bailey or interviews of other audit firms despite documents describing months of efforts to secure an auditor;
- Communications between the independent directors/committee members who approved the CIH spin-off and the 2019 CIH Share Purchase Agreement;
- Communications with Mo regarding why he wanted to sell "around $50-$100 million of [his] CIH shares" to Fang before September 30, 2019 (3 months before Fang entered the 2019 CIH Share Purchase Agreement), because of a "window issue";
- Communications with Media Partner and Next Decade regarding entering the 2019 Share Purchase Agreement;
- Communications with Media Partner and Next Decade regarding the $5.99 CIH per share option price, despite documents referencing negotiations with the "sellers" regarding the $5.99 CIH share price;
- Communications from Fang to CEA regarding CEA's value conclusion for CIH;
- Communications with any other valuation firms for CIH despite emails purporting that Fang "contacted with three well-known appraisal firms";
- Communications with Roth Capital Partners regarding report drafts or the valuation of CIH for the take private transaction;
- Documents concerning communications with members of the buyer group consortium and rollover shareholders regarding the CIH take private transaction or CIH's value;
- Communications with any of the eleven sellers relating to the over 20 transactions whereby they sold their Fang and CIH interests to Mo and Dai and their respective entities, Ace and True Knight, from June 2021 through May 2022 while Fang was no longer making its annual securities filings; and
- Communications with outside auditors regarding their hiring despite documents describing months of efforts to secure an auditor.

In addition to the instant application, Respondent has noted that Petitioners have applied for

discovery under Section 1782 in several other Districts seeking to obtain evidence for the

appraisal proceeding in Cayman.  All of Petitioners' applications across these Districts have been granted or were voluntarily dismissed.  *See In re 507 Summit*, 2024 WL 81842, at *3 (authorizing Petitioners to issue the proposed subpoena in full); *507 Summit v. Hayes*, No. 24 Civ. 10260 (MAS) (RLS), 2024 WL 6847468, at *1 (D.N.J. Nov. 22, 2024) (granting Petitioners' application to take deposition of foreign respondent Jie Jiao Hayes at Dkt. No. 6); *507 Summit LLC v. Kroll LLC et al.*, 23 Misc. 43 (D. Del. 2023) (granting Petitioners' Section 1782 application for document production and depositions at Dkt. No. 9); *In re Application of 507 Summit LLC, et al.*, 23 Misc. 40 (MTL) (D. Ariz. 2023) (voluntarily dismissing the application at Dkt. No. 13); *In re Application of 507 Summit LLC*, No. 23 Misc. 80243 (DMR) (N. D. Cal 2023) (voluntarily dismissing the application at Dkt. No. 28).

Respondent describes the scope of the requested discovery differently.  Specifically, Respondent says that the chart encompasses a substantial portion of the more than 300,000 pages of documents produced in the New York derivative action, many of which relate to transactions and events that postdate the CIH take-private transaction or concern FHL conduct unrelated to CIH's fair value as of the merger date.  Respondent asserts that the chart includes documents that are not directly at issue in the Cayman appraisal proceeding.  Respondent further represents that discovery in the Cayman appraisal proceeding is ongoing and that Petitioners are scheduled to receive document production directly from CIH pursuant to the Cayman Court's procedures.  Consequently, to the extent documents responsive to valuation issues exist, Respondent avers those materials will either be produced by CIH in the appraisal proceeding or are duplicative of documents already available to Petitioners through other means.

Following a case management conference in this matter, the parties discussed a potential compromise. Respondent proposed producing documents limited to the CIH take-private transaction, including materials relating to the merger agreement, the $1.00 per share consideration, and the filing of the merger with Cayman authorities, subject to appropriate confidentiality protections. Respondent proposed this production on the condition that Petitioners provide reciprocal discovery in response to a non-party subpoena served on them in the New York action. Petitioners declined that proposal and maintained their request for production of all documents identified in the chart, without limitation. As a result, Respondent now asserts that the instant application is retaliatory in nature and indicates forum shopping to obtain evidence that is unavailable in Cayman.

Ultimately, the discovery sought in this application consists of a discrete but substantial body of documents previously produced in domestic litigation, the relevance and proportionality to the Cayman appraisal proceeding are disputed by the parties.

## LEGAL STANDARD

Section 1782 empowers a United States district court to order any person residing within its jurisdiction to provide discovery for use in a foreign proceeding pursuant to the application of an interested party. 28 U.S.C. § 1782(a). Applicants for discovery under Section 1782 must meet three statutory requirements: "(1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal', and (3) the applicant must be either a foreign tribunal or an 'interested person.'" *In re Accent Delight Int'l Ltd.*, 869 F.3d

121, 128 (2d Cir. 2017) (citing *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798

F.3d 113, 117 (2d Cir. 2015)).

Provided the statutory requirements for discovery are met, the Court must then

determine, in its discretion, whether the discovery should be permitted in light of the four so-

called *Intel* factors.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  These

factors are as follows:

- Whether the person from whom discovery is sought is a participant in the foreign proceeding;
- The nature and character of the foreign tribunal and proceedings before it, as well as the tribunal's receptivity to U.S. federal-court judicial assistance;
- Whether the discovery request is an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States; and
- Whether the discovery is unduly intrusive or burdensome.

*Id.*, at 264-65.  When evaluating these factors, the Court must be mindful of the goals of Section

1782:  to provide efficient means of assistance to participants in international litigation and to

encourage foreign countries by example to provide similar means of assistance to U.S. courts.

*Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

## DISCUSSION

Respondent concedes that it resides in or can be found in the Southern District of New

York and that Petitioners are "interested" in the Cayman proceeding within the meaning of 28

U.S.C. § 1782(a),  (Resp. Mem., at 4)  but argues the second statutory requirement is not met.

(*Id.*)  I address the remaining statutory and discretionary factors below.

### 1. Statutory Factor

Respondent argues that Petitioners have not shown that the requested documents are

"for use" in the Civil Action because many, if not all the documents identified and being used in

the New York derivative action are irrelevant to share valuation, thus outside the scope of the Cayman litigation.

Satisfaction of the "for use" element requires that there be a foreign proceeding[1] and that the proceeding be adjudicative in nature. *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). Assuming this threshold is met, a petitioner can demonstrate that discovery is for "use" in a foreign proceeding by showing that it can employ the information sought "with some advantage" in the foreign proceeding. *Accent Delight Int'l Ltd.*, 869 F.3d at 131-32. The information need be only "minimally relevant" and there must be a "procedural mechanism by which petitioner may inject the discovery it seeks" into the foreign proceeding. *In re Ativos Especiais II – Fundo de Investimento em Direitos Creditorios – NP*, No. 24 Misc. 119, 2024 WL 4169550, at *4 (S.D.N.Y. Sept. 12, 2024) (cleaned up); *Certain Funds*, 798 F.2d at 120-21.

Whether a foreign proceeding is adjudicative in nature must be determined on a case-by-case basis with careful consideration of whether the information sought through the Section 1782 application can be used to some advantage in the foreign proceeding. *In re YS GM Marfin II LLC*, 20 Misc. 182, 2022 WL 624291, *5; *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, No. 20 Misc. 188 (PAE), 2020 WL 2793055, at *4 (S.D.N.Y. May 29, 2020); *In re Accent Delight Int'l Ltd.*, 869 F.3d at 132. When the foreign tribunal engages in factfinding then it is adjudicative. *Union Fenosa Gas, S.A.*, 2020 WL 2793055, *5; *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 25 F.4th 99 (2d Cir. 2022) (no categorical bar to obtaining Section 1782 relief in connection with post-judgment proceeding).

---

[1] There is no articulated dispute that there is, in fact, a foreign proceeding associated with the instant matter.

Here, Respondent does not – nor can it – dispute that the pending Civil Action *is* adjudicative in nature because the Cayman Court is tasked with determining the fair value of Petitioners' CIH shares and ruling on the issue.

The term "for use" is afforded "a broad interpretation," *Deposit Ins. Agency v. Leontiev*, No 17 Misc. 414 (GBD) (SN) 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018).  Intrinsically, the "for use" requirement may be satisfied so long as the materials sought are "to be used at some stage of a foreign proceeding."  *In re Accent Delight Int'l Ltd*., 869 F.3d 121, 132 (2d Cir. 2017).

Respondent's argument, as noted, hinges on the premise that not all the documents requested would be relevant to a share value determination by the Cayman Court.  However, the alleged overbreadth of the Subpoenas is better addressed when considering the fourth *Intel* factor, particularly when, as here, Respondent concedes that at least some of the documents sought are relevant to a share value determination to be made by the Cayman Court. *In re Kingstown Partners Master Ltd*., No. 21 Misc. 691 (LTS), 2022 WL 1081333, at *5 (S.D.N.Y. Apr. 8, 2022) (finding that the "for use" requirement is satisfied "so long as the materials sought are 'to be used at some stage of a foreign proceeding.'") (quoting *In re Accent Delight Int'l Ltd*., 869 F.3d 121, 132 (2d Cir. 2017).  Thus, because some of the documents sought are relevant to share value – the core of the Cayman Court action – the subpoena meets the "for use" prong of the statute.

Petitioners have therefore met the statutory preconditions for their discovery motion. The Court now turns to its application of the discretionary *Intel* factors and concludes, for the reasons that follow, that those factors weigh in favor of granting Petitioners' motion, with certain limitations.

### 2. *Intel* Factors

Respondent asserts that the *Intel* factors caution against granting the application because Petitioners' application is overbroad, evinces a retaliatory attempt to circumvent foreign proof-gathering restrictions, and is overly intrusive and burdensome.

### A. Whether Respondent is a Participant in the Foreign Proceeding

When the party from whom information is sought is not a participant in the foreign proceeding, then the party may be outside of the foreign tribunal's reach and unobtainable absent Section 1782 aid. *Intel*, 542 U.S. at 264. Thus, this factor evaluates whether the information sought is within the jurisdiction of the foreign court. *In re Postalis*, 2018 WL 6725406, *5. Here, Respondent is not a participant in the pending foreign proceeding, and it is unclear whether they would be participants in any future action. Also, Petitioner has not articulated any basis for a court in the Cayman Islands to have jurisdiction over the Respondent. Thus, this factor militates in favor of discovery.

### B. The Nature and Character of the Foreign Tribunal, the, Proceedings Before It, and the Tribunal's Receptivity to U.S. Federal-Court Judicial Assistance

The second *Intel* factor – the nature of the foreign proceedings and receptivity of the foreign tribunal to federal-court assistance – requires courts to consider "(1) whether United States assistance would offend the foreign country ... and (2) whether the material sought is admissible in the foreign tribunal." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. 19 Misc. 88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006). "The Second Circuit has instructed this Court to consider 'only authoritative proof' in considering these factors." *Id.* at *6 (quoting *In re Application of Euromepa S.A.*, 51 F.3d 1095, 1099-1100 (2d Cir.1995)). "[M]ost courts frame the second *Intel* factor's inquiry as focused on 'the

receptivity to U.S. federal-court judicial assistance' 'more generally,' not whether the specific court would admit each specific piece of evidence sought, since such an analysis would involve domestic courts in narrow questions of foreign law better suited to their foreign counterparts." *In re Kingstown Partner Master Ltd*, 2022 WL 1081333, at *5 (quoting *In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016)).

Respondent does not dispute that courts in the Cayman Islands are typically receptive to considering discovery sought and obtained in the United States through Section 1782. Instead, it argues that Cayman Courts "prefer their own procedures in appraisals, which limit discovery to expert exchanges. (*Id.* (citing *In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006)). Respondent's reliance on *In re Application of Microsoft Corp* is inapposite for the purposes of adjudicating this factor. The case was cited for the premise that the Court denied the Section 1782 application because it found that Microsoft's discovery request was "not objectively necessary but rather an attempt to circumvent the established rules." This argument goes to the third *Intel* factor rather than the second. Respondent further argues, without support, that Cayman Courts are receptive to "expert exchanges" and "targeted aid, not broad production." However, evidence that depends on equivocal readings of foreign law or foreign policy is ordinarily inadequate to justify the denial of discovery in a Section 1782 action. *See e.g., In re Application of Grupo Qumma, S.A.*, No. M8-85 (DC), 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) (authorizing discovery under Section 1782 despite disagreement over whether the foreign tribunal would accept the evidence). In circumstances like this, the Second Circuit has made clear that district courts should generally resolve any doubt in favor of allowing the requested discovery to proceed. *See Euromepa,* 51 F.3d at 1101 (2d Cir.1995) ("[I]t

is far preferable for a district court to reconcile whatever misgivings it may have about the

impact of its participation in the foreign litigation by issuing a closely tailored discovery order

rather than by simply denying relief sought."); *In re Grupo Qumma,* 2005 WL 937486, at *2-3

(approving the § 1782 discovery request and leaving questions of admissibility to the Mexican

court, notwithstanding the parties' submission of dueling expert declarations addressing the

significance of prior Mexican judicial rulings and the requirements of Mexican evidentiary law).

Consequently, the second *Intel* factor weighs in favor of granting Petitioners' motion.

### C. Whether the Discovery Request is an Attempt to Circumvent Foreign Proof-Gathering Restrictions or Policies of a Foreign Country or the United States

"The third discretionary factor aims to protect against abuse of § 1782 as a vehicle to

end-run foreign proof-gathering restrictions or other foreign policies."  *In re Application of*

*Gemeinshcaftspraxis*, 2006 WL 3844464, at *7 (citing *Intel,* 524 U.S. at 265)  Respondents argue

that the third *Intel* factor is not met because the instant application is yet another attempt by

Petitioners to obtain evidence unavailable in the Caymans.  However, Respondent points to no

proof-gathering restriction under Cayman law and instead references, without support, the

Cayman Court's preference for limited discovery and a focus on experts in appraisal

proceedings.  This is insufficient.  The law is clear that it is "[o]nly where materials being sought

are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor

implicated."  *In re Tiberius Group*, 2020 WL 1140784, at *4 (citing *In re Accent Delight Int'l Ltd*.,

791 F. App'x 247 (2d Cir. 2019)). Though Respondent has made the argument that because it is

a law firm, it is entitled to additional scrutiny under Section 1782, it does not make the

argument that any of the documents Petitioners seek are privileged or otherwise

undiscoverable.  (Resp. Mem., at 8)  Moreover, a mere preference by the Cayman Court for

expert discovery in appraisal proceedings does not mean that the Cayman Court prohibits the obtaining of fact information such as the kind sought here upon which an expert might rely. *See In re Qunar Cayman Is. Ltd.,* at *1 (expert testimony and methodology based upon review of documentary evidence was dispositive in determining fair value of shares in an analogous appraisal proceeding under Section 238). Undoubtedly, Petitioners' application represents an effort to obtain discovery that they could not secure through foreign proceedings. Indeed, the Cayman Court, does not have the authority to order nonparties – like respondent – outside of its jurisdiction to produce evidence. *See In re 507 Summit*, 2024 WL 81842, at *2. That circumstance, however, does not render the application an "impermissible" use of Section 1782. On the contrary, facilitating access to evidence unavailable or unobtainable by a foreign court is exactly the kind of support the statute was intended to provide. Respondent need not argue that Petitioners are attempting to circumvent proof-gathering restrictions simply because they have applied for discovery pursuant to Section 1782 against several parties in several Districts. *See In re Application of Imanagement Serv., Ltd*., No. M5-89 (FB), 2005 WL 1959702, at *5 (E.D.N.Y. Aug. 16, 2005) (granting Section 1782 application where "resort to § 1782 may be the only avenue by which [the requesting party] can obtain the discovery it seeks."). It is clearly established that the Cayman Court permits some document discovery in appraisal proceedings. *E.g. Lyxor Asset Mgm't S.A. v. Phoenix Meridian Equity Limited* [2009] CILR 553; *In re Nord Anglia Education, Inc.* (Unreported, March 17, 2020). And, Respondent has not articulated what ulterior motive, Petitioners have for making this request other than the allegation that Petitioners would only comply with the New York subpoena if Respondent capitulates to the instant application. (Resp. Mem., at 3, 4) Absent any other indication of bad

faith on Petitioners' part, the request for Section 1782 assistance in other Districts cannot be deemed a negative discretionary factor.  It is at most a neutral consideration.

### D.  Whether the Discovery is Unduly Intrusive or Burdensome

The final *Intel* factor requires a court to consider "[w]hether the subpoena contains unduly intrusive or burdensome requests." *In re Warren*, No. 20 MISC. 208 (PGG), 2020 WL 6162214, at *5 (S.D.N.Y. Oct. 21, 2020) (citing *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 193 (S.D.N.Y. 2006) and *Intel*, 542 U.S. at 264-65).  When evaluating this factor, the Court is guided by the standards of Rule 26 of the Federal Rules of Civil Procedure.  *Mees*, 793 F.3d at 302.

Respondents argue that the discovery sought is overbroad insofar as it seeks information not relevant to the pending Cayman action and that it constitutes an improper fishing expedition.

Rule 26(b)(1) provides that a party may obtain discovery of information "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors relevant to proportionality are the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

While the proposed subpoenas are broad and seek more information than required to evaluate the price of CIH shares, the Court finds that the New York derivative action and the Cayman action are linked and that many of the documents produced in the New York suit bears directly on CIH equity valuation.   This is particularly true to the extent Petitioners seek information in the chart that explicitly discuss CIH value or deliberate attempts to drive share

price up or down.  On the other hand, fiduciary duty claims rather than information related to share valuation or suppression of CIH's market price are outside the scope of what is relevant for an appraisal proceeding.

Thus, the Court finds, that this *Intel* factor is met for some of the information sought and that it can and should narrow the discovery sought to be consistent with the purposes of Section 1782.[2]  Namely, the Court finds the following categories of information to be relevant to the CIH share valuation and proportional to the needs of the case:

- Documents concerning the rationale for the 2019 CIH Share Purchase Agreement's $5.99 CIH per share option price;
- Documents concerning any alleged suppression, manipulation, or distortion of CIH's market price prior to the merger;
- Documents concerning the selection of independent directors or committee members for the CIH spin-off;
- Documents concerning the selection of the China Enterprise Appraisals ("CEA") and the evaluation of other firms mentioned in email correspondence for the valuation of the 2019 CIH Share Purchase Agreement;
- Documents concerning CEA's CIH value conclusion;
- Documents concerning Fang's decision to drive up the open market price of CIH in the lead up to the CIH Share Purchase Agreement option exercise in December 2019 and June 2020 through a series of open market purchases;
- Documents concerning the rationale for the CIH take private transaction;
- Documents concerning the selection of Roth Capital Partners to provide a valuation of CIH for the CIH take private;
- Documents concerning hiring Malone Bailey or interviews of other audit firms despite documents describing months of efforts to secure an auditor;
- Communications with Mo regarding why he wanted to sell "around $50-$100 million of [his] CIH shares" to Fang before September 30, 2019 (3 months before Fang entered the 2019 CIH Share Purchase Agreement), because of a "window issue";
- Communications with Media Partner and Next Decade regarding entering the 2019 Share Purchase Agreement;
- Communications with Media Partner and Next Decade regarding the $5.99 CIH per share option price, despite documents referencing negotiations with the "sellers" regarding the $5.99 CIH share price;
- Communications from Fang to CEA regarding CEA's value conclusion for CIH;

---

[2] Because the Court will narrow the discovery requests, it does not address Respondents' argument that the discovery is retaliatory, as that argument goes principally to the burden of the discovery sought.

- Communications with any other valuation firms for CIH despite emails purporting that Fang "contacted with three well-known appraisal firms";
- Communications with Roth Capital Partners regarding report drafts or the valuation of CIH for the take private transaction;
- Communications between the independent directors/committee members who approved the CIH spin-off and the 2019 CIH Share Purchase Agreement;
- Documents concerning communications with members of the buyer group consortium and rollover shareholders regarding the CIH take private transaction or CIH's value;

The Court finds the following categories to be of little or no relevance to the CIH valuation because they seek information concerning corporate governance processes unrelated to the approval of the spin-off transaction, regulatory compliance issues, or unrelated third-party transactions that do not bear on the determination of CIH's fair value as of the valuation date.  They are, therefore, not relevant to Petitioners' claims and are disproportionate to the needs of the case:

- Documents concerning the selection of independent directors or committee members for the approval of CIH buybacks;
- Documents concerning the decision for Next Decade and Media Partner to enter the 2019 CIH Share Purchase Agreement with Fang;
- Documents concerning Fang's decision to exercise its CIH Share Purchase Agreement option in both December 2019 and June 2020;
- Documents concerning the decision not to file Fang's annual SEC filings for the years 2020 onward;
- Documents concerning the decision not to file SEC filing extension requests;
- Documents concerning Ace's and True Knight's purchases of Fang and CIH interest from eleven sellers through over 20 transactions in June 2021 through May 2022 while Fang was no longer making its annual securities filings;
- Documents concerning the timing and purchase price amounts for Ace's and True Knight's purchases of Fang's and CIH interest from eleven sellers through over 20 transactions in June 2021 through May 2022 while Fang was no longer making its annual securities filing;
- Communications with any of the eleven sellers relating to the over 20 transactions whereby they sold their Fang and CIH interests to Mo and Dai and their respective entities, Ace and True Knight, from June 2021 through May 2022 while Fang was no longer making its annual securities filings; and
- Communications with outside auditors regarding their hiring despite documents describing months of efforts to secure an auditor.

### 3. Costs

A district court may determine how the costs arising from a non-party's compliance with a subpoena issued pursuant to Section 1782 are to be allocated. "In evaluating the allocation of costs under Section 1782, the Court can look to cases considering similar issues under Fed. R. Civ. P. 45." *In re T-Sys. Scheiz AG*, No. 20 Misc. 308 (GHW), 2020 WL 7384007, at *2 (S.D.N.Y. Dec. 16, 2020). Determining each party's share of the cost of compliance in such circumstances "turns on three factors: (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance." *Id*. (citing *In re World Trade Ctr. Disaster Site Litig.*, No. 21 Misc. 100 (AKH), 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010)).

Here, Respondent had no articulable role in the take-private transaction and there is no discernible evidence that it has any direct financial interest in the outcome of the Cayman proceeding. While, Respondent has expressed that the costs of producing discovery would present an "undue burden," and that costs should shift entirely to Petitioners, Respondent does not represent whether or not it can readily "bear the costs" of production. ((Resp. Mem., at 8); *Id.* Finally, the outcome of the appraisal proceeding is not of significant public importance. Accordingly, the Court determines that, in light of the specific circumstances presented here, requiring Petitioners to assume fifty percent of the costs incurred by Respondent in the production of documents requested appropriately reconciles the broad and permissive discovery regimes embodied by Section 1782 and Rule 26 with the imperative of shielding non-parties from excessive burden, financial or otherwise. *See In re Kingstown Partners Master Ltd.*,

2022 WL 1081333, at *7 (granting 1782 application and ordering the petitioner to assume half the costs incurred by the respondent in production).

### **CONCLUSION**

For the above-stated reasons, the Petition is GRANTED in part and DENIED in part. Any motion to quash, modify or for other relief by Respondent shall be filed within thirty days of this Order.

**The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 1.**

**SO ORDERED.**

Dated:    January 26, 2026
          New York, New York

_____
        KATHARINE H. PARKER
        United States Magistrate Judge