**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 507 SUMMIT LLC, *et al.*,<br><br>          Petitioners,<br><br>     v.<br><br>BALANCE LAW PLLC d/b/a Balance Law Firm,<br><br>          Respondent. | Case No. 1:25-mc-00235-KHP<br><br>Honorable Katharine H. Parker |

**RESPONDENT BALANCE LAW PLLC'S MEMORANDUM OF**
**LAW IN SUPPORT OF MOTION TO QUASH PETITIONERS' SUBPOENA**

Beixiao Robert Liu
Balance Law Firm
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
(646) 558-4889 (fax)
robert.liu@balancelawfirm.com

*Attorneys for Respondent Balance Law*
*Firm PLLC d/b/a Balance Law Firm*

## Table of Contents

**PRELIMINARY STATEMENT** ........................................................................................ 1

**BACKGROUND AND PROCEDURAL HISTORY** ................................................... 2

**ARGUMENT** ................................................................................................................... 3

    I.    AFTER SUBJECTING THE SUBPOENA TO HEIGHTENED SCRUTINY BASED ON THE SPECIAL LEGAL/POLICY CONCERNS IDENTIFIED BY THE *KIOBEL* SECOND CIRCUIT CASE AND OTHER CASES, THIS COURT SHOULD QUASH THE SUBPOENA BECAUSE IT IMPROPERLY SEEKS DOCUMENTS FROM A U.S. LAW FIRM THAT WERE TRANSMITTED TO IT FROM ABROAD BY A FOREIGN CLIENT FOR THE PURPOSE OF OBTAINING LEGAL ADVICE. ..................................................................................................................... 4

    II.   THE COURT SHOULD QUASH THE SUBPOENA BECAUSE PETITIONERS FILED THIS ABUSIVE SECTION 1782 APPLICATION TO HARASS BALANCE LAW IN RETALIATION FOR BALANCE LAW HAVING SERVED A SUBPOENA ON PETITIONER 507 SUMMIT LLC IN THE STATE COURT ACTION. ........................................................................................ 10

**CONCLUSION** ............................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

Cases

*507 Summit LLC v. Balance Law PLLC*,
  No. 25-MC-235 (KHP), 2026 WL 205837 (S.D.N.Y. Jan. 26, 2026) .............................. passim
*Application of Sarrio, S.A.*,
  119 F.3d 143 (2d Cir. 1997) ................................................................................... 4, 5, 7
*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ............................................................................................ 10
*In re Alghanim*,
  No. 21-MC-00167, 2022 WL 1423088 (S.D.N.Y. May 5, 2022) ................................ 8
*In re B&C KB Holding GmbH*,
  No. 23-1014(L), No. 24-887(con), 2024 WL 3170983 (2d Cir. June 26, 2024) ........ 10
*In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A.*,
  No. 24-MC-348 (JMF), 2025 WL 40783 (S.D.N.Y. Jan. 7, 2025) ............................ 3
*In re Hulley Enterprises, Ltd.*,
  358 F. Supp. 3d 331 (S.D.N.Y. 2019) ........................................................................ 8
*In re Klein*,
  No. 223 Misc. 211 (PAE), 2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023) ................. 7
*In re Warren*,
  No. 20 Misc. 208 (PGG), 2020 WL 6162214 (S.D.N.Y. Oct. 21, 2020) .................... 8
*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) .......................................................................................... 3, 6, 10
*Kiobel by Samkalden v. Cravath, Swain & Moore LLP*,
  895 F.3d 238 (2d Cir. 2018) ................................................................................ passim
*Klein v. Altara RK Investments Ltd.*,
  No. 24-228-cv, 2025 WL 560105 (2d Cir. Feb. 20, 2025) ......................................... 7
*Lelchook v. Lebanese Canadian Bank*,
  670 F. Supp. 3d 51 (S.D.N.Y. 2023) ................................................................. 6, 7, 10

Statutes

28 U.S.C. § 1782 .................................................................................................... passim

In accordance with the deadline set by the Court's Opinion and Order (ECF No. 21), *507 Summit LLC v. Balance Law PLLC*, No. 25-MC-235 (KHP), 2026 WL 205837 (S.D.N.Y. Jan. 26, 2026) ("1/26/26 Order"), Respondent Balance Law PLLC ("Balance Law") hereby requests that the Court quash the subpoena duces tecum ("the Subpoena") issued by Petitioners 507 Summit LLC and KOA Capital L.P. (collectively, "Petitioners").

## PRELIMINARY STATEMENT

This is not a run-of-the-mill 28 U.S.C. § 1782 proceeding, and the Subpoena is not a run-of-the-mill subpoena. Balance Law, the target of the Subpoena, is a law firm that "is not a party," 1/26/26 Order, 2026 WL 205837, at *1, to the underlying Cayman Islands appraisal proceeding that Petitioners commenced after dissenting from a take-private transaction. Balance Law (a U.S. law firm) was not responsible for—and has had no financial interest or any other involvement in—the events that gave rise to, and/or are at issue in, that Cayman Islands proceeding. Instead, Balance Law is an innocent bystander to the Cayman Islands appraisal proceeding. Balance Law has been representing certain foreign defendants ("the Foreign Defendants") in a New York state court shareholder derivative lawsuit ("the State Court Action"). The Subpoena seeks documents that are held by Balance Law in its capacity as counsel for the Foreign Clients. Balance Law did not create the documents, and they are in Balance Law's possession only because one of the Foreign Clients provided them to Balance Law to enable it to provide legal advice in the State Court Action and produce the documents to the plaintiff in that lawsuit, pursuant to a confidentiality protective order (issued by the court presiding over that lawsuit) that required the documents to be used only for purposes of that lawsuit.

In these circumstances, this Court should subject the Subpoena to heightened scrutiny based on the special legal/policy concerns identified by *Kiobel by Samkalden v. Cravath, Swain*

*& Moore LLP*, 895 F.3d 238 (2d Cir. 2018), and other cases involving documents provided to U.S. law firms by foreign clients for the purpose of obtaining legal advice—namely, the need to avoid disturbing communications and relationships between U.S. law firms and their foreign clients and to avoid otherwise harming our system of litigation. When subjected to that heightened scrutiny, the Subpoena should be quashed because it improperly seeks documents from Balance Law that were transmitted to Balance Law from abroad by a foreign client for the purpose of obtaining legal advice from Balance Law and it implicates the other legal/policy concerns discussed below.

There is another reason for this Court to quash the Subpoena; Petitioners instituted this abusive Section 1782 proceeding to harass Balance Law in retaliation for a subpoena that Balance Law, on behalf of the Foreign Clients, had served on Petitioner 507 Summit LLC in accordance with non-party discovery authorized by the court presiding over the State Court Action. Shortly after Balance Law served that subpoena, Petitioners filed their Section 1782 application against Balance Law.

Each of the two arguments summarized above independently provide ample justification for the Court to quash the Subpoena, and—when viewed together—they provide even more support for the conclusion that the Subpoena should be quashed.

## **BACKGROUND AND PROCEDURAL HISTORY**

After Petitioners and Balance Law conferred about a potential resolution to this dispute (following a case management conference with the Court) and did not reach agreement, *see* 1/26/26 Order, 2026 WL 205837, at *5, the parties briefed whether the Court should grant the relief sought by Petitioners.

2

On January 26, 2026, this Court held that Petitioners satisfied the requirements of Section 1782; granted in part and denied in part Petitioner's application; and narrowed the scope of permissible discovery. 1/26/26 Order, 2026 WL 205837, at *8-10. The Court correctly stated that Balance Law "had no articulable role in the take-private transaction and there is no discernable evidence that it has any direct financial interest in the outcome of the Cayman proceeding." *Id*. at *10. The Court gave Balance Law thirty days to file a motion to quash the Subpoena. *Id*.

In response to the 1/26/26 Order, Petitioners served the Subpoena on Balance Law. Declaration of B. Robert Liu ("2026 Liu Declaration") ¶ 2 & Exhibit 1 (copy of the Subpoena) (filed this same date).

On February 25, 2026, counsel for Balance Law and counsel for the Petitioners had a meet-and-confer call with Petitioners' counsel, but we did not agree on a resolution to this dispute. 2026 Liu Declaration ¶ 3.

## **ARGUMENT**

Although the Supreme Court's *Intel* case articulated four factors that a district court should consider when deciding whether to exercise its discretion to allow discovery in a Section 1782 proceeding, *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-64 (2004), those factors do not end the analysis. As the Second Circuit explained, those four *Intel* factors are "non-exclusive," *Kiobel*, 895 F.3d at 244, and they "are not to be applied mechanically," *id*. at 245. "A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Id*. In other words, those *Intel* factors "are neither exhaustive nor dispositive." *In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A.*, No. 24-MC-348 (JMF), 2025 WL 40783, at *2 (S.D.N.Y. Jan. 7, 2025).

3

Thus, merely because this Court applied the four *Intel* factors in the 1/26/26 Order and granted Petitioner's application in part does not mean that the Court is required to deny this motion to quash. Instead, the Court should exercise its discretion to grant this motion because, as discussed below, "other pertinent issues arising from the facts of th[is] particular dispute." *Kiobel*, 895 F.3d at 245, lead inexorably to the conclusion that the Subpoena should be subjected to heightened scrutiny and quashed.

**I.     After Subjecting The Subpoena To Heightened Scrutiny Based On The Special Legal/Policy Concerns Identified By The *Kiobel* Second Circuit Case And Other Cases, This Court Should Quash The Subpoena Because It Improperly Seeks Documents From A U.S. Law Firm That Were Transmitted To It From Abroad By A Foreign Client For The Purpose Of Obtaining Legal Advice.**

*First*, when reviewing an appeal of an order issued in a Section 1782 proceeding, the Second Circuit has recognized that a subpoena seeking documents that were maintained abroad and sent to a lawyer in the United States for legal advice regarding their discoverability presents a special legal/policy concern that is not presented by subpoenas seeking other kinds of documents in other circumstances. The court acknowledged the "policy of promoting open communications between lawyers and their clients" in those circumstances and stated that it "would be jeopardized if documents unreachable in a foreign country became discoverable because the person holding the documents sent them to a lawyer in the United States for advice as to whether they were subject to production." *Application of Sarrio, S.A.*, 119 F.3d 143, 146 (2d Cir. 1997). That special legal/policy concern identified in *Sarrio* was not limited to, and was broader than, the attorney-client privilege.

In *Kiobel*, the Second Circuit reaffirmed, and expanded upon, the special legal/policy concern discussed in *Sarrio*. The *Kiobel* court stated that a "law firm's representation of a foreign client is a factor worth considering," 895 F.3d at 244, by a district court when deciding

4

whether to exercise its discretion to allow or preclude discovery in a Section 1782 proceeding. *Kiobel* held that the district court had abused its discretion when granting a Section 1782 petition involving a document subpoena issued to a law firm that was "holding the documents because it represented [Royal Dutch] Shell [("Shell")] in prior litigation brought by Kiobel against Shell," 895 F.3d at 240. As the *Kiobel* court explained, *Sarrio* stands for the proposition that "a district court should not exercise its discretion to grant a Section 1782 petition for documents held by a U.S. law firm in its role as counsel for a foreign client if the documents are undiscoverable from the client abroad, ***because this would disturb attorney-client communications and relations***." *Kiobel*, 895 F.3d at 246 (emphasis added). In other words, "an order compelling American counsel to deliver documents that would not be discoverable abroad, and that are in counsel's hands solely because they were sent to the United States for the purpose of American litigation, would jeopardize 'the policy of promoting open communications between lawyers and their clients.'" *Id*. at 241 (quoting *Sarrio*, 119 F.3d at 146)).

    The special legal/policy concerns addressed by the Second Circuit in *Kiobel* were not limited to, and were broader than, the attorney-client privilege. The documents at issue in *Kiobel* previously had been produced by the respondent law firm's client (Shell) to Shell's litigation adversary Kiobel, albeit pursuant to "a confidentiality order that expressly barred Kiobel from using the documents in any other litigation," *Kiobel*, 895 F.3d at 246, so the law firm did not argue that the documents were protected from discovery by the attorney-client privilege. The confidentiality order presented another special legal/policy concern for the Second Circuit: "It is perilous to override the confidentiality order; doing so would inhibit foreign companies from producing documents to U.S. law firms, even under a confidentiality order, lest Section 1782 become a workaround to gain discovery." *Kiobel*, 895 F.3d at 247.

5

The *Kiobel* court identified additional special legal/policy concerns implicated by "unintended consequences," 895 F.3d at 247, that would result from allowing litigants to use Section 1782 as a workaround to gain discovery from U.S. law firms. For example, after addressing "the need for full and frank communications between attorneys and their clients, which promote[s] broader public interests in the observance of law and administration of justice," *id*. (quotation marks omitted; alteration in original), the court explained that, "[i]f foreign clients have reason to fear disclosing all pertinent documents to U.S. counsel, the likely results are bad legal advice to the client, and harm to our system of litigation," *id*. Moreover, "to avoid potential disclosure issues under Section 1782, U.S. law firms with foreign clients may be forced to store documents and servers abroad, which would result in excessive costs to law firms and clients." *Kiobel*, 895 F.3d at 247. "Alternatively, U.S. law firms may have to return documents to foreign clients (or destroy them) as soon as litigation concludes." *Id*. That would be problematic because "law firms have an interest in retaining documents where needed to protect themselves from accusations of wrongful conduct[,]" *id*. "[s]o U.S. law firms may be harmed if they must destroy or return a foreign client's documents as soon as possible once a proceeding is completed," *id*. at 248. Or, as the Second Circuit stated, "foreign entities may simply be less willing to engage with U.S. law firms." *Id*.

This Court discussed the special legal/policy concerns addressed by the Second Circuit in *Kiobel* and *Sarrio* when the Court granted a non-party law firm's motion to quash a subpoena seeking documents that the law firm "acquired in the course of representing [foreign clients]," *Lelchook v. Lebanese Canadian Bank*, 670 F. Supp. 3d 51, 52 (S.D.N.Y. 2023) (Parker, J.). As the Court stated, "courts have rejected efforts to obtain discovery from foreign entities and persons whose documents are in the U.S. solely for purposes of seeking legal advice in the

6

context of 28 U.S.C. § 1782, because allowing such discovery would be contrary to public policy seeking to promote full and frank communication between attorneys and clients and observance of the rule of law and administration of justice." *Lelchook*, 670 F. Supp. 3d at 55 (citing *Kiobel*, 895 F.3d at 245-46; *Sarrio*, 119 F.3d at 143).[1] Moreover, this Court acknowledged the potential harms addressed by *Kiobel*: "causing foreign clients to fear disclosing documents to U.S. counsel, likely leading to 'bad legal advice and harm to our system of litigation,' as well as potential excessive costs to store documents abroad and decrease foreign entities' willingness to engage with U.S. law firms." *Lelchook*, 670 F. Supp. 3d at 57 (citing *Kiobel*, 895 F.3d at 247-48); *see In re Klein*, No. 223 Misc. 211 (PAE), 2023 WL 8827847, at *11 (S.D.N.Y. Dec. 21, 2023) (stating that *Kiobel* involved a subpoena to legal counsel, which "implicate[s] unique concerns about lawyer-client relations (and the need for candor and confidentiality) not presented by subpoenas to U.S. financial institutions"), *aff'd sub nom. Klein v. Altara RK Investments Ltd.*, No. 24-228-cv, 2025 WL 560105 (2d Cir. Feb. 20, 2025) (summary order).

    Other Southern District of New York judges repeatedly have relied on the special legal/policy concerns identified by the Second Circuit in *Kiobel* to block discovery efforts to obtain documents from U.S. law firms that received the documents from their foreign clients for the purpose of rendering legal advice to those clients. For example, in one Section 1782 case, the court rejected the petitioner's effort to subpoena such client documents from a U.S. law firm and stated: "In sum, the primary concern that motivated the *Kiobel* court – that documents of a foreign entity would become discoverable under Section 1782(a) solely because they were produced by the foreign entity to its U.S. counsel in connection with U.S. litigation – is present

---

[1] Although *Lelchook* involved a Rule 45 subpoena that was not issued in a Section 1782 proceeding, this Court stated that the "rationale for declining discovery aimed at foreign entities' U.S. law firms under Section 1782 applies with equal force to the same type of discovery sought pursuant to Rule 45." *Lelchook*, 670 F. Supp. 3d at 55.

7

here." *In re Warren*, No. 20 Misc. 208 (PGG), 2020 WL 6162214, at *10 (S.D.N.Y. Oct. 21, 2020); *see also, e.g.*, *In re Alghanim*, No. 21-MC-00167, 2022 WL 1423088, at *3 (S.D.N.Y. May 5, 2022) (denying Section 1782 application seeking documents from law firm that it had received from foreign client; stating that "the Court shares the concerns for lawyer-client relations that the Second Circuit expressed in *Kiobel*" (quotation marks omitted)); *In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 346-47 (S.D.N.Y. 2019) (same; stating that "policy considerations articulated in *Kiobel* apply to this situation to the extent that attorneys located in the United States should not have to fear that section 1782 will be used to require them to produce materials belonging to their foreign client").

*Second*, the special legal/policy concerns that are implicated, as discussed in *Kiobel* and other cases discussed above, when a party seeks documents from a U.S. law firm that it received from a foreign client for the purpose of providing legal advice to that client should cause this Court to subject the Subpoena to heightened scrutiny and quash it because it presents those special legal/policy concerns. Like the documents at issue in *Kiobel* and other cases cited above, the documents sought by the Subpoena were received by Balance Law—a U.S. law firm—from one of the Foreign Clients for the purpose of Balance Law providing legal advice to that client with respect to the State Court Action. 2026 Liu Declaration ¶¶ 4, 6, 7, 9. Balance Law did not create those documents and has them in its possession only because they were transmitted from abroad to Balance Law. *Id.* ¶ 7. Balance Law was not responsible for—and has had no financial interest or any other involvement in—the events that gave rise to, and/or are at issue in, the Cayman Islands appraisal proceeding. *Id.* ¶ 5. Moreover, the documents sought by the Subpoena were produced in discovery to the plaintiff in the State Court Action, by Balance Law acting as counsel for the Foreign Clients, pursuant to a Confidentiality Protective Order that required the

8

documents to be utilized "only for purposes of this litigation [*i.e.*, the State Court Action] and for no other purposes." *Id.* ¶ 8 & Exhibit 2, ¶ 6. When the documents were transmitted from abroad to Balance Law and then produced to the plaintiff in the State Court Action, the Foreign Clients relied on the protections provided by the Confidentiality Protective Order to ensure that the documents would be produced only to the plaintiff in the State Court Action and for use only in that lawsuit. 2026 Liu Declaration ¶ 9. When agreeing to have the documents transmitted from abroad to Balance Law for the purpose of being assessed by Balance Law for (among other things) discoverability and then produced to the plaintiff in the State Court Action, Balance Law relied on the Confidentiality Protective Order to ensure that the documents would be produced only to the plaintiff in that lawsuit and for use in only that lawsuit. *Id.*

In these circumstances, allowing the Petitioners to obtain the documents they seek by declining to quash the Subpoena would implicate the special legal/policy concerns discussed in *Kiobel* and other cases. Such a ruling would create a significant chilling effect on communications and relationships between U.S. law firms and their foreign clients by "disturb[ing] attorney-client communications and relations," *Kiobel*, 895 F.3d at 246, and "jeopardiz[ing] the policy of promoting open communications between lawyers and their clients," *id.* at 241 (quotation marks omitted). Declining to quash the Subpoena also would override the Confidentiality Protective Order, creating the kind of "workaround [for Petitioners] to gain discovery [from Balance Law]," *id.* at 247, that concerned the *Kiobel* court because that would "inhibit foreign companies from producing documents to U.S. law firms," *id.* Moreover, if the Court does not quash the Subpoena, that ruling also would lead to the "unintended consequences," *id.*, that the *Kiobel* court wanted to avoid:

- "foreign clients hav[ing] reason to fear disclosing all pertinent documents to U.S. counsel," likely resulting in "bad legal advice to the client, and harm to our system of litigation," *id.*;

9

- U.S. law firms with foreign clients being forced "to store documents and servers abroad, which would result in excessive costs to law firms and clients" or U.S. law firms having "to return documents to foreign clients (or destroy them) as soon as litigation concludes," id., which may harm those firms, *id*. at 248;

- foreign entities "be[ing] less willing to engage with U.S. law firms," *id*.

The important legal/policy concerns discussed above far outweigh any need that Petitioners claim for the documents sought by the Subpoena, because the outcome of the Cayman Islands appraisal proceeding is, as this Court correctly stated, "not of significant public importance," 1/26/26 Order, 2026 WL 205837, at *10.

In sum, allowing the discovery at issue here "would be contrary to public policy seeking to promote full and frank communication between attorneys and clients and observance of the rule of law and administration of justice," *Lelchook*, 670 F. Supp. 3d at 55, so this Court should quash the Subpoena.[2]

## II. The Court Should Quash The Subpoena Because Petitioners Filed This Abusive Section 1782 Application To Harass Balance Law In Retaliation For Balance Law Having Served A Subpoena On Petitioner 507 Summit LLC In The State Court Action.

A district court is permitted to prevent Section 1782 discovery if the court "suspects that the discovery is being sought for the purposes of harassment." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012). Thus, the Second Circuit has "entrusted district courts to weed out abusive Section 1782 applications in their discretionary review of applications that satisfy the statutory criteria." *In re B&C KB Holding GmbH*, No. 23-1014(L),

---

[2] Although this Court cited various other Section 1782 applications filed by Petitioners to seek evidence for the Cayman Islands appraisal proceeding, *see* 1/26/26 Order, 2026 WL 205837, at *4, those applications differed—in an important respect—from the application at issue here because those applications did not seek discovery from a law firm.

No. 24-887(con), 2024 WL 3170983, at *3 (2d Cir. June 26, 2024) (summary order) (quotation marks omitted).

This Court should quash the Subpoena because Petitioners filed this abusive Section 1782 application to harass Balance Law in retaliation for Balance Law having served a subpoena on Petitioner 507 Summit LLC in the State Court Action in accordance with non-party discovery authorized by the court presiding over that lawsuit. *See* 8/8/25 Declaration of B. Robert Liu ("2025 Liu Declaration") ¶¶ 21-23 (ECF No. 17) & Exhibit A (ECF No. 17-1). "Shortly thereafter" (*i.e.*, after Balance Law served that subpoena), Petitioners filed the Section 1782 application at issue here. 1/26/26 Order, 2026 WL 205837, at *2. Petitioners' refusal to engage in good-faith negotiations regarding a potential agreement to resolve this dispute and the unreasonable, overbroad, and burdensome document requests made by Petitioners provide further evidence of their retaliatory intent. *See* 2025 Liu Declaration ¶¶ 24–29.

## **CONCLUSION**

The two arguments presented above each independently lead to the conclusion that the Subpoena should be quashed, and—when viewed together—they provide even stronger support for that conclusion. For the foregoing reasons, the Court should quash the Subpoena in its entirety.

In the alternative, if the Court declines to quash the Subpoena, the Court should order the parties to meet and confer in a good-faith effort to reach agreement regarding a proposed protective order, to be submitted to the Court, that would protect the confidentiality of the documents, along the lines of the Confidentiality Protective Order that governed the production of the documents in the State Court Action.

11

Dated: New York, New York  
       February 25, 2026

Respectfully submitted,

*B. Robert Liu*
_____
B. Robert Liu (Bar No. 5697552)  
Balance Law Firm  
1 World Trade Center, Suite 8500  
New York, NY 10007  
(212) 741-8080  
(646) 558-4889 (fax)  
robert.liu@balancelawfirm.com

*Attorneys for Respondent Balance Law Firm PLLC d/b/a Balance Law Firm*

**Certificate Regarding Local Civil Rule 7.1 Compliance**

Relying on the word count of the word-processing program used to prepare this document, the undersigned states that the number of words in this document is 3,524 and certifies that this document complies with the word-count limitation as set forth in Local Civil Rule 7.1.

*B. Robert Liu*
B. Robert Liu (Bar No. 5697552)
Balance Law Firm
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
(646) 558-4889 (fax)
robert.liu@balancelawfirm.com

Attorneys for Respondent Balance Law Firm PLLC d/b/a Balance Law Firm