UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| 507 SUMMIT LLC et al  Applicants  v.  BALANCE LAW PLLC d/b/a Balance Law Firm  Respondent | Case 25-mc-235-KHP |
|---|---|

**<u>MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO QUASH</u>**

Jeffrey Chubak
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com
Attorneys for Applicants

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................ 1

ARGUMENT ................................................................................................................................... 2

    I.     LEGAL STANDARD ................................................................................................ 2

    II.    THE SUBPOENA SHOULD NOT BE QUASHED OR MODIFIED ............................... 2

CONCLUSION ................................................................................................................................ 6

WORD COUNT CERTIFICATION ..................................................................................................

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*507 Summit LLC v. Balance Law PLLC*
   2026 WL 205837 (S.D.N.Y. Jan. 26, 2026) ................................................................... 1, 2, 5

*Intel Corp. v. Advanced Micro Devices, Inc.,*
   542 U.S. 241 (2004) .................................................................................................................. 3

*Jones v. Hirschfeld,*
   219 F.R.D. 71 (S.D.N.Y. Dec. 9, 2003) .................................................................................... 2

*Kiobel by Samkalden v. Cravath, Swaine & Moore L.L.P.,*
   895 F.3d 238 (2d Cir. 2018) .............................................................................................. 1, 2, 3, 5

*Lelchook v. Lebanese Canadian Bank, SAL,*
   670 F. Supp. 3d 51 (S.D.N.Y. 2023) ..................................................................................... 2, 5

*In re Lifetrade Litig.,*
   2022 WL 3644357 (S.D.N.Y. Aug. 24, 2022) ............................................................................ 4

*In re Application of Orthogen Int'l GmbH,*
   2026 WL 311482 (S.D.N.Y. Feb. 5, 2026) ................................................................................ 2

*Application of Sarrio, S.A.,*
   119 F.3d 143 (2d Cir. 1997) .................................................................................................. 2, 5

*In re SBK ART LLC,*
   2026 WL 478787 (2d Cir. Feb. 20, 2026) ........................................................................... 1, 3, 4

*Universitas Educ., LLC v. Nova Group, Inc.,*
   2013 WL 57892 (S.D.N.Y. Jan. 4, 2013) .................................................................................. 4

**Statues and Rules**

28 U.S.C. § 1782 .............................................................................................................. 1, 2, 3

Fed. R. Civ. P. 45 .................................................................................................................. 1, 2

# **INTRODUCTION**[1]

The motion to quash relies principally on *Kiobel by Samkalden v. Cravath, Swaine & Moore L.L.P.*, 895 F.3d 238, 249 (2d Cir. 2018). But *Kiobel* was a § 1782 decision, not a FRCP 45(d)(3) decision. Once § 1782 discovery is authorized, § 1782 issues "drop out" and discovery is guided by the Federal Rules. In any event, the Second Circuit made clear in *In re SBK ART LLC*, 2026 WL 478787 (2d Cir. Feb. 20, 2026) that *Kiobel* does not prohibit § 1782 discovery of law firms. The issues presented in *Kiobel*—privilege and confidentiality—do not present here. None of the documents at issue are privileged, as they were all produced to the derivative plaintiff. The notion that they "were transmitted to it [respondent] from abroad by a foreign client for the purpose of obtaining legal advice" (ECF #24 "Moving Br." at 5) is inherently incredible, given the circumstances under which the chart attached to the subpoena was generated. As to confidentiality, petitioners are amenable to entering into a confidentiality order, as they did in the General Atlantic § 1782 proceeding (23-mc-427, ECF #33), including one that provides all the protections included in the state court (ECF #23-2) derivative action, had only respondent asked rather than burden the Court with discovery motions. Simply put, there is no risk of § 1782 discovery undermining or circumventing an existing confidentiality order.

Respondent otherwise argues that the subpoena is abusive because it is retaliatory. That is false. The requested documents are clearly relevant, and in any event no undue burden is presented by the requested document discovery given that the subject documents are already identified by Bates number.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Opinion and Order on Application for Discovery for Use in a Foreign Proceeding, entered January 26, 2026 (ECF #21, 2026 WL 205837, the "Order").

1

Petitioners request that the Court promptly determine this motion as the May 2025 directions order (ECF #18-1, "Directions Order") requires the parties' experts to exchange their reports by May 12, 2026, and the experts will need sufficient time to review the produced documents in advance of that deadline.

## ARGUMENT

I.     **LEGAL STANDARD**

"Any discovery permitted under Section 1782 is subject to the Federal Rules of Civil Procedure." *In re Application of Orthogen Int'l GmbH*, 2026 WL 311482, at *2 (S.D.N.Y. Feb. 5, 2026). "Thus, the Court looks to Federal Rule of Civil Procedure 45 when evaluating a motion to quash." *Id*.

Pursuant to FRCP 45(d)(3), the Court "must quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies".

Having prevailed in this § 1782 proceeding, petitioners have satisfied their initial burden of proving that the documents sought are relevant and proportional (Order at 17-18), so the burden is now on respondent to show the documents sought are privileged or otherwise protected from disclosure. *Orthogen*, 2026 WL 311482, at *2 (citing *Lelchook v. Lebanese Canadian Bank, SAL*, 670 F. Supp. 3d 51, 54-55 (S.D.N.Y. 2023)). *See also Jones v. Hirschfeld*, 219 F.R.D. 71, 74-75 (S.D.N.Y. Dec. 9, 2003) ("The burden of persuasion in a motion to quash a subpoena … is borne by the movant") (collecting cases).

II.    **THE SUBPOENA SHOULD NOT BE QUASHED OR MODIFIED**

Respondent argues (Moving Br. at 5-7) that the Second Circuit decisions *Kiobel* and before that *Application of Sarrio, S.A.*, 119 F.3d 143, 146 (2d Cir. 1997) essentially prohibit § 1782 discovery of law firms on public policy grounds.

2

In *SBK*, the Second Circuit rejected a similar argument interposed by Akin Gump as § 1782 respondent, that *Kiobel* categorically limits § 1782 discovery of law firms.

In affirming a decision authorizing § 1782 discovery of Akin Gump, the Second Circuit observed "[t]he *Intel* factors and the confidentiality order were essential to the *Kiobel* decision." *Id*. at *10. Neither warrants limiting discovery here.

As to the *Intel* factors, in *Kiobel*, the petitioner sought discovery from counsel for its litigation opponent in the foreign proceeding, and the Second Circuit held the district court abused its discretion in authorizing § 1782 discovery because the litigation opponent—who is of course a party to the foreign proceeding, for purposes of the first *Intel* factor—was "the real party from whom documents are sought." Here, the *Intel* factors have no application at this stage. "[O]nce a district court has opened the statutory gate to discovery, any disputes around its proper scope are governed by ordinary rules of discovery." *SBK*, 2026 WL 478787, at *7. At that point, "section 1782 drops out." *Id*. *See also id*. at *12 ("Section 1782 merely acts as a gate designed to prevent abuses …. The District Court, in granting SBK's petition, opened the gate to permit SBK to seek discovery from Akin; once the discovery requests are formally issued, the ordinary rules of discovery will govern any disputes regarding specific materials. Those rules will adequately protect Akin").

As to the confidentiality order, in *Kiobel*, the Second Circuit prohibited § 1782 discovery that would serve to evade restrictions in a stipulated confidentiality order in the foreign proceeding. *Id*. at *10-11. This rationale has no application, not just because in *Kiobel*, discovery was sought of counsel for the litigation opponent in the foreign proceeding, whereas here the respondent is not counsel for CIH, but also because petitioners are amenable to entering into a confidentiality order, as they did in the General Atlantic § 1782 proceeding (23-mc-427, ECF [#33](#33)), including one that

3

provides all the protections included in the state court (ECF #23-2) derivative action.  Respondent did not so much as ask petitioners to enter into a confidentiality order prior to making this motion but instead used confidentiality as a pretext to delay.

In addition, no showing has been made that the subject documents actually include FRCP 26(c)(1)(G) commercial information, or otherwise constitute Confidential Information under the stipulated confidentiality order entered in the derivative action (ECF #23-2 ¶3.a) which is itself grounds to deny the motion.  *E.g. Universitas Educ., LLC v. Nova Group, Inc.*, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) (denying motion to quash where defendant made "no attempt to establish any proprietary or other confidentiality related interest it may have in the requested documents beyond a conclusory assertion that the subpoenas seek documents that are 'private, confidential and commercially sensitive'").

Further, respondent's claim that the confidentiality order in the derivative action "required the documents to be used only for purposes of that lawsuit" (Moving Br. at 1) is wrong.  That order only imposes limits on the receiving party (ECF #23-2 ¶6), not the producing party: "Confidential Information shall be utilized by the Receiving Party and its counsel only for purposes of this litigation and for no other purposes."  The derivative defendants, represented by the respondent herein, were the producing party.  (Liu Decl. ¶8.)

As in *SBK*, in which "the District Court limited the scope of the subpoenas to topics that it found relevant … and … limited production to only non-privileged materials", the materials sought by the subpoena are limited to those this Court already found relevant, and which are necessarily non-privileged in that they were produced to the derivative plaintiff (ECF #23, "Liu Decl." ¶8), abrogating any conceivable privilege.  *In re Lifetrade Litig.*, 2022 WL 3644357, at *2 (S.D.N.Y. Aug. 24, 2022) ("the privilege is waived if the holder of the privilege discloses or consents to the

4

disclosure of the privileged communication to a third party", unless "the third party is an agent of the attorney or client"). Respondent does not claim the documents are protected from disclosure under the work product doctrine or other protection from disclosure.

*Lelchook* is easily distinguished. In *Lelchook*, the plaintiffs subpoenaed Covington & Burling seeking documents concerning Lebanese Canadian Bank that two former clients Nest and Nahl shared with the firm in connection with a lawsuit it brought on their behalf which was dismissed after a motion on the pleadings. The Court rejected efforts to obtain those documents from Covington, based on policy concerns. 670 F. Supp. 3d at 55 (citing *Kiobel* and *Sarrio*) ("allowing such discovery would be contrary to public policy seeking to promote full and frank communication between attorneys and clients and observance of the rule of law and administration of justice"). These concerns are not presented here because, as noted above, the documents sought are not privileged.

No evidence is shown, beyond respondent's say-so (Liu Decl. ¶7, Moving Br. at 7-8),[2] that the subject documents were produced to respondent for the purpose of rendering legal advice. Even if so, the subject documents would not be protected from disclosure because any conceivable privilege was abrogated when they were produced in discovery (Liu Decl. ¶8) in the derivative action.

Nor is any evidence shown, beyond respondent's say-so (Moving Br. at 7-8, citing ECF #17 ¶¶21-30), that the subject discovery is retaliatory in nature. It is not. The Court already found it relevant to the issue of CIH share valuation. (Order at 17-18.) In any event, "that argument goes principally to the burden of the discovery sought" (id. at n.2) which is minimal as (id. at 5) "[t]he

---

[2] Mr. Liu's declaration concerning his client's motivation for sharing documents with respondent is inadmissible hearsay, as to which no exception applies.

requested discovery is not framed as traditional document requests … Instead, Petitioners seek production of a defined universe of documents previously produced by FHL and its affiliates through Respondent in connection with discovery in the New York shareholder derivative action". No explanation is provided by respondent as to how the subject discovery is "burdensome" ([Moving Br.](  )at 11) particularly given that the subject documents are already identified by Bates number.

## CONCLUSION

The motion to quash should be denied. Petitioners respectfully request prompt determination of this motion so that they can obtain the subject document discovery and produce the subject documents back to CIH in the Cayman appraisal proceeding within the time period needed under the [Directions Order](  ).

Dated: New York, New York  
March 1, 2026

Amini LLC

/s/ Jeffrey Chubak  
Jeffrey Chubak  
131 West 35th Street  
12th Floor  
New York, NY 1001  
(212) 490-4700  
jchubak@aminillc.com  
Attorneys for Applicants

6

**WORD COUNT CERTIFICATION**

    I hereby certify under penalty of perjury that the foregoing memorandum of law in opposition has 1,666 words, excluding the cover page, table of contents, table of authorities and signature block, as calculated using the word-count feature of the word-processing program used to prepare the same, and so complies with Local Civil Rule 7.1(c).

                                                                /s/ Jeffrey Chubak