UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 507 SUMMIT LLC, *et al.*, <br><br> Applicants, <br><br> v. <br><br> BALANCE LAW PLLC d/b/a Balance Law Firm, <br><br> Respondent. | Case No. 1:25-mc-00235-KHP <br><br> Honorable Katharine Parker |

**RESPONDENT BALANCE LAW PLLC'S REPLY
IN SUPPORT OF MOTION TO QUASH PETITIONERS' SUBPOENA**

B. Robert Liu (Bar No. 5697552)
Balance Law Firm
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
(646) 558-4889 (fax)
robert.liu@balancelawfirm.com

*Attorneys for Respondent Balance Law
Firm PLLC d/b/a Balance Law Firm*

## Table of Contents

**PRELIMINARY STATEMENT** ................................................................................................................ 1

**ARGUMENT** ................................................................................................................................................ 1

    I.    THE OPPOSITION FAILS TO PRESENT ANY PERSUASIVE REBUTTAL TO BALANCE LAW'S SHOWING THAT THIS COURT SHOULD SUBJECT THE SUBPOENA TO HEIGHTENED SCRUTINY AND QUASH IT ........................................... 1

    II.    THE OPPOSITION FAILS TO PRESENT ANY PERSUASIVE REBUTTAL TO BALANCE LAW'S SHOWING THAT PETITIONERS FILED THIS ABUSIVE SECTION 1782 APPLICATION TO HARASS BALANCE LAW IN RETALIATION FOR A SUBPOENA SERVED BY BALANCE LAW IN THE STATE COURT ACTION. ............................................................... 8

**CONCLUSION** ........................................................................................................................................ 10

Table of Authorities

Page(s)

Cases

*507 Summit LLC v. Balance Law PLLC*,
  2026 WL 205837 (S.D.N.Y. Jan. 26, 2026) ........................................................ 2, 5, 9
*Application of Sarrio, S.A.*,
  119 F.3d 143 (2d Cir. 1997) ............................................................................... 1
*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ................................................................................. 10
*Cohen v. Group Health Inc.*,
  No. 22-MC-0200 (PAE)(KHP), 2022 WL 4534552 .......................................... 5
*Eletson Holdings Inc. v. Levona Holdings Ltd.*,
  23-cv-7331 (LJL), 2025 WL 2294589 (S.D.N.Y. Aug. 8, 2025) ........................ 5
*In re Klein*,
  No. 223 Misc. 211 (PAE), 2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023) .......... 3
*In re SBK ART LLC*,
  No. 25-1563-cv, 2026 WL 478787 (2d Cir. Feb. 20, 2026) ............................... 1, 7, 8
*In re Subpoena Issued to Dennis Friedman*,
  350 F.3d 65 (2d Cir. 2003) ................................................................................. 5
*In re Warren*,
  No. 20 Misc. 208 (PGG), 2020 WL 6162214 (S.D.N.Y. Oct. 21, 2020) ........... 3
*Kiobel by Samkalden v. Cravath, Swain & Moore LLP*,
  895 F.3d 238 (2d Cir. 2018) ............................................................................... passim
*Lelchook v. Lebanese Canadian Bank*,
  670 F. Supp. 3d 51 (S.D.N.Y. 2023) .................................................................. 4, 5
*Liner Freedman Taitelman Cooley, LLP v. Lively*,
  No. 25-mc-289 (LJL), 2025 WL 2205973 (S.D.N.Y. Aug. 4, 2025) .................. 5, 9

Statutes

28 U.S.C. § 1782 .................................................................................................... 1, 5

Rules

Rule 45(d)(3) of the Federal Rules of Civil Procedure ......................................... 5

## **PRELIMINARY STATEMENT**

In its Memorandum of Law in Support of Motion to Quash Petitioners' Subpoena ("Opening Memorandum") (ECF No. 24), Respondent Balance Law PLLC ("Balance Law") presented compelling reasons why this Court should quash the Petitioners' subpoena ("the Subpoena"). Petitioners' Opposition ("Opposition") mischaracterizes Balance Law's arguments; misconstrues *Kiobel by Samkalden v. Cravath, Swain & Moore LLP*, 895 F.3d 238 (2d Cir. 2018); and otherwise fails to provide any persuasive basis for this Court to decline to quash the Subpoena.

## **ARGUMENT**

**I.     The Opposition Fails To Present Any Persuasive Rebuttal To Balance Law's Showing That This Court Should Subject The Subpoena To Heightened Scrutiny And Quash It.**

The Opposition fails to present any persuasive rebuttal to Balance Law's showing, based on *Kiobel* and a string of other cases, that the Court should subject the Subpoena to heightened scrutiny and quash it.

***First***, the Opening Memorandum showed that this Court should subject the Subpoena to heightened scrutiny based on the special legal/policy concerns addressed in *Kiobel* and other cases, but Petitioners mischaracterize that argument by creating a straw man argument. They claim: (a) that Balance Law argues that *Kiobel* and *Application of Sarrio, S.A.*, 119 F.3d 143, 146 (2d Cir. 1997), "essentially prohibit [28 U.S.C.] § 1782 discovery of law firms on public policy grounds," Opp'n at 2; and (b) that *In re SBK ART LLC*, No. 25-1563-cv, 2026 WL 478787 (2d Cir. Feb. 20, 2026), rejected a similar argument made by the law firm respondent in that case, "that *Kiobel* categorically limits § 1782 discovery of law firms," *id*. at 3. However, that is ***not***

Balance Law's argument. Balance Law relied not only on *Kiobel* and *Sarrio* but also on Southern District of New York cases—including a ruling by this member of the Court—that establish the need for heightened judicial scrutiny of the Subpoena in this case. Moreover, Balance Law does not contend that *Kiobel* and *Sarrio* "essentially prohibit" or "categorically limit" discovery from law firms. Petitioners accuse Balance Law of making, in effect, a meat cleaver argument, but Balance Law makes a scalpel argument that is nuanced, takes into account the particular circumstances presented here, and would not prohibit discovery from law firms in all cases.[1] Balance Law urges this Court to subject the Subpoena to heightened scrutiny based on the special legal/policy concerns identified by *Kiobel* and other cases involving documents provided to U.S. law firms by foreign clients for the purpose of obtaining legal advice—namely, the need to avoid disturbing communications and relationships between U.S. law firms and their foreign clients and to avoid otherwise harming our system of litigation.

*Kiobel* and other cases cited by Balance Law lead inexorably to the conclusion that this Court should apply a heightened scrutiny standard here because those cases address legal/policy concerns that apply when the target of discovery is a law firm (or a lawyer) but not when the

---

[1] A party to litigation might seek documents from a law firm in various circumstances, including when the law firm: (a) has been accused of malpractice; (b) was directly involved in the facts at issue in the underlying litigation (*e.g.*, by having drafted the contract at issue); or (c) otherwise created documents that are important to the underlying litigation (*e.g.*, by having provided an opinion letter about an issue for which an advice-of-counsel defense has been asserted). None of those circumstances, or anything comparable, are present here. Balance Law and its attorneys are not percipient witnesses to the events at issue in the Cayman Islands appraisal proceeding. Balance Law "had no articulable role in the take-private transaction and there is no discernable evidence that it has any direct financial interest in the outcome of the Cayman proceeding." 1/26/26 Order, *507 Summit LLC v. Balance Law PLLC*, 2026 WL 205837, at *10 (S.D.N.Y. Jan. 26, 2026). The Opposition does not contend otherwise. Balance Law was not responsible for—and has had no financial interest or any other involvement in—the events that gave rise to, and/or are at issue in, that Cayman Islands appraisal proceeding. 2/25/26 Declaration of B. Robert Lui ("Liu Declaration") ¶ 5 (ECF No. 23). The Opposition does not dispute that sworn statement. Balance Law did not create the documents sought by the Subpoena and has them in its possession only because they were transmitted from abroad to Balance Law by one of its clients. *Id.* ¶¶ 7, 9. The Opposition also does not dispute those sworn statements.

discovery target is a non-law-firm entity (or a non-lawyer). *See* Opening Mem. at 4-8. Thus, a "law firm's representation of a foreign client is a factor worth considering," *Kiobel*, 895 F.3d at 244, when a district court decides whether to exercise its discretion to allow discovery. That makes sense because subpoenas to lawyers "implicate unique concerns about lawyer-client relations (and the need for candor and confidentiality) not presented by subpoenas to [, for example,] U.S. financial institutions." *In re Klein*, No. 223 Misc. 211 (PAE), 2023 WL 8827847, at *11 (S.D.N.Y. Dec. 21, 2023) (relying, *inter alia*, on *Kiobel*), *aff'd sub nom. Klein v. Altara RK Investments Ltd.*, No. 24-228-cv, 2025 WL 560105 (2d Cir. Feb. 20, 2025) (summary order); *see In re Warren*, No. 20 Misc. 208 (PGG), 2020 WL 6162214 (S.D.N.Y. Oct. 21, 2020) (applying different analyses and making different rulings regarding discovery directed at law-firm respondent (denied, based on *Kiobel*) and discovery directed at non-law-firm respondent (allowed), which supports the conclusion that discovery directed to law firms should be subject to heightened judicial scrutiny).

**Second**, Petitioners try to evade the impact of *Kiobel* by claiming that attorney-client privilege was one of "[t]he issues presented in *Kiobel*" and that "[n]one of the documents at issue here are privileged," Opp'n at 1, but that materially misconstrues *Kiobel*. In fact, attorney-client privilege was **not** at issue for the documents in *Kiobel* because they previously had been produced by the respondent law firm's client (Shell) to Shell's litigation adversary Kiobel, 895 F.3d at 246, so the law firm's appeal was not based the attorney-client privilege. The only instances where the *Kiobel* court addressed privilege arose when it discussed two cases (including *Sarrio*) where privilege claims had been asserted. *See Kiobel*, 895 F.3d at 245-46. The rest of the opinion makes clear that the *Kiobel* court's concerns—about potential harms to U.S. law firms, lawyer-client relations, and our system of litigation—apply to cases that do not

3

involve documents allegedly protected from disclosure by the attorney-client privilege. Thus, Southern District of New York judges repeatedly have relied on *Kiobel* to block efforts to obtain discovery from law firms in cases where attorney-client privilege was not claimed as a basis to resist such discovery. *See* Opening Mem. at 7-8 (citing cases). Petitioners ignore those cases because they have no basis to avoid the impact of those cases. In sum, the documents addressed in *Kiobel* were not covered by a privilege claim, and the documents at issue here likewise are not covered by a privilege claim, so Petitioners cannot use the lack of a privilege claim to argue that Balance Law is precluded from relying on *Kiobel*.

    ***Third***, Petitioners also fail when trying to distinguish the ruling issued by this member of the Court in *Lelchook v. Lebanese Canadian Bank*, 670 F. Supp. 3d 51 (S.D.N.Y. 2023) (Parker, J.). They correctly state that *Lelchook* (citing *Kiobel* and *Sarrio*) rejected efforts to obtain documents by subpoena from a law firm "based on policy concerns," Opp'n at 5 (citing *Lelchook*, 670 F. Supp. 3d at 55), but then Petitioners proceed to make the false, unsupported assertion that "[t]hese concerns are not presented here because, as noted above, the documents sought are not privileged," Opp'n at 5. In fact, the part of the *Lelchook* opinion that discussed the policy concerns addressed in *Kiobel* and *Sarrio*—*i.e.*, the part of the opinion upon which Balance Law relies, *see* Opening Mem. at 6-7—was ***not*** based on the attorney-client privilege, so Petitioners cannot use the lack of a privilege claim by Balance Law to try to distinguish *Lelchook* from this case. Contrary to Petitioners' mischaracterization of *Lelchook*, the same policy concerns discussed in that opinion apply here and support the conclusion that the Subpoena should be subjected to heightened scrutiny and quashed. Likewise, other cases have recognized that document subpoenas to law firms can create potential problems even when the attorney-client privilege and/or the work-product doctrine are not implicated, including "interfer[ing] with

4

the attorney-client relationship," *Liner Freedman Taitelman Cooley, LLP v. Lively*, No. 25-mc-289 (LJL), 2025 WL 2205973, at *5 (S.D.N.Y. Aug. 4, 2025); *see, e.g.*, *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) (stating that "[c]ourts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery"); *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 23-cv-7331 (LJL), 2025 WL 2294589, at *8 (S.D.N.Y. Aug. 8, 2025) (declining to enforce document subpoena served on a law firm because intervenors that served subpoena did not "show[] that the need to take discovery of [the law firm] justifies the burden and hardship imposed by the intrusion into the attorney-client relationship in these circumstances" (citing *Friedman*, 350 F.3d at 72)); *Cohen v. Group Health Inc.*, No. 22-MC-0200 (PAE)(KHP), 2022 WL 4534552, at * (S.D.N.Y. Sept. 28, 2022) (Parker, J.) ("Courts recognize a special concern about the burdens imposed on the adversary process when lawyers themselves are the subject of discovery requests." (citing *Friedman*, 350 F.3d at 70)).

**Fourth**, Petitioner's misguided effort to conjure up a material difference between a Section 1782 ruling and a ruling based on Rule 45(d)(3) of the Federal Rules of Civil Procedure, *see* Opp'n at 1, is directly contrary to this Court's *Lelchook* opinion. If a subpoena seeks documents from a U.S. law firm that were provided to it from abroad by a foreign client, the same concerns addressed in *Kiobel*, *Sarrio*, and other cases cited in the Opening Memorandum apply regardless of whether the discovery ruling is made under Section 1782 or Rule 45(d)(3). The "rationale for declining discovery aimed at foreign entities' U.S. law firms under Section 1782 ***applies with equal force*** to the same type of discovery sought pursuant to Rule 45." *Lelchook*, 670 F. Supp. 3d at 55 (emphasis added).[2]

---

[2] Balance Law respectfully submits that this Court's 1/26/26 Order, *507 Summit LLC v. Balance Law PLLC*, 2026 WL 205837 (S.D.N.Y. Jan. 26, 2026), erroneously applied the four *Intel* factors

***Fifth***, Petitioners' confusing discussion of confidentiality order issues does not help their argument and shows that they want to have their cake and eat it too. In a purported effort to allay the concern that their discovery efforts here would evade restrictions in the Confidentiality Protective Order pursuant to which Balance Law produced the documents to the plaintiffs in the New York state court shareholder derivative lawsuit (the "State Court Action"), Petitioners state that they "are amenable to entering into a confidentiality order …, including one that provides all the protections in the state court … derivative action," Opp'n at 3-4. However, that promise does not "provide [this] U.S. [C]ourt[] with assurance that [Cayman Islands] courts will enforce [a] protective order[] [issued by this Court]," *Kiobel*, 895 F.3d at 247. Then, in the next breath, Petitioners question the confidentiality of documents that Balance Law, in its capacity as defense counsel in the State Court Action, produced to the plaintiffs in that case. *See* Opp'n at 4.[3] As is common in complex lawsuits when a large volume of documents is produced pursuant to a confidentiality protective order, Balance Law designated the documents as confidential under the Confidentiality Protective Order issued in the State Court Action, in reliance on that order and the process set forth therein for resolving by agreement, and if necessary litigating, any disputes about whether any particular document actually was "Confidential Information" within the meaning of that order. Supplemental Declaration of B. Robert Liu ("Supplemental Liu Declaration") ¶ 4 (filed this same date). The State Court Action has been settled; a final

---

mechanically, *see Kiobel*, 895 F.3d at 244, 245 (stating that four *Intel* factors are "non-exclusive" and "are not to be applied mechanically"), and did not apply the heightened scrutiny required by *Kiobel*, *Sarrio*, and the other cases cited in the Opening Memorandum. Even assuming for the sake of argument that Petitioners are correct that there is a material difference between a Section 1782 ruling and a Rule 45(d)(3) ruling, the 1/26/26 Order was an interlocutory (*i.e.*, non-final) order, so this Court is free to revisit that ruling and subject Petitioner's Section 1782 application to the requisite heightened scrutiny.

[3] That argument shows that Petitioners want to harass and retaliate against Balance Law by imposing additional burdens on it and its clients by creating a litigation side-show regarding whether the documents are confidential.

6

judgment has been entered in that case; and none of the documents produced by Balance Law as confidential under the Confidentiality Protective Order were removed from the protections of that order (whether by agreement or due to court rulings). *Id*. ¶ 5.

**Sixth**, Petitioners rely heavily on the Second Circuit's recent *SBK ARK* opinion, but it does not undermine the conclusion that this Court should subject the Subpoena to heightened scrutiny and quash it. That ruling is distinguishable in material respects from, and thus inapposite, to the issues presented here. It is undisputed that Balance Law was an innocent bystander to, and was not involved in any way, in the events at issue in the underlying Cayman Islands appraisal proceeding. By contrast, the law firm that tried to resist the discovery addressed in *SBK ARK* was directly and extensively involved in the events at issue in the underlying proceedings for which that discovery was sought. *See SBK ART*, 2026 WL 478787, at *2-3. Indeed, according to the petitioner in that case, an opinion memorandum prepared by the law firm allegedly "was one of the key documents." *Id*. at *3 (quotation marks omitted); *see id*. at *11 (quoting statement in the law firm's brief regarding "[n]umerous documents created by [the law firm] in its role as a legal advisor, negotiator, or evaluator for Fortenova" (quotation marks omitted; alteration in original)). Moreover, in *SBK ARK*, the law firm did not argue that the Section 1782 petition "was made in faith, for the purpose of harassment, or unreasonably [sought] cumulative or irrelevant materials," *id*. at *11 (quotation marks omitted; alteration in original), but Balance Law **has made those arguments** regarding the discovery sought by Petitioners in this case. Another important difference between *SBK ARK* and this case is that the law firm in that case asked the Second Circuit to "impose categorical limitations on Section 1782's reach," *id*., but Balance Law does not make such a far-reaching argument and merely asks this Court to apply a heightened-scrutiny standard. That is consistent with *Kiobel* and the

7

other cases cited in the Opening Memorandum, and is not inconsistent with the *SBK ARK* opinion, which re-affirmed "the strong policy concerns surrounding protection of attorney-client relations," 2026 WL 478787, at *11, and acknowledged that the law firm "is entitled to object to any discovery" sought by the petitioner on the grounds that production "unduly interferes in its attorney-client relationship," *id*. at *1.[4]

***Finally***, Petitioners miss the mark by questioning the statement in the Opening Memorandum that the documents at issue here were transmitted to Balance Law from abroad by a foreign client for the purpose of obtaining legal advice. *See* Opp'n at 1 (quoting Opening Memorandum). Without a declaration or any other evidence, Petitioners denigrate that statement as "inherently incredible." Opp'n at 1. Not so. In fact, it would be inherently incredible (and contrary to "Litigation 101" principles) for Balance Law to produce its foreign client's documents to the plaintiffs in the State Court Action without first assessing discoverability—namely, which documents were within the scope of applicable discovery requests and whether any documents should be withheld as privileged. That clearly constitutes rendering legal advice to the client. Thus, the documents at issue here: (a) were received from Balance Law from one of its foreign clients; and (b) were transmitted from abroad to Balance Law for the purpose of being assessed by Balance Law for (among other things) discoverability. Liu Declaration ¶¶ 7, 9. Petitioners do not, and cannot, present any evidence to rebut those sworn statements.

**II.     The Opposition Fails To Present Any Persuasive Rebuttal To Balance Law's Showing That Petitioners Filed This Abusive Section 1782 Application To Harass Balance Law In Retaliation For A Subpoena Served By Balance Law In The State Court Action.**

The Opening Memorandum showed—based on when this Section 1782 proceeding was

---

[4] A Second Circuit panel cannot overrule a prior Second Circuit panel opinion, so *SBK ARK* did not, and does not purport to, overrule *Kiobel*.

8

filed and other conduct by Petitioners and their counsel—that they filed this abusive Section 1782 application to harass Balance Law in retaliation for a subpoena that Balance Law served in the State Court Action. As another member of this Court recognized, document subpoenas to law firms can create various problems, including "run[ning] the risk of harassment." *Liner Freedman Taitelman Cooley, LLP*, 2025 WL 2205973, at *5. That risk has materialized in this case because that was Petitioners' goal.

Petitioners do not have any persuasive rebuttals to Balance Law's retaliation/harassment argument. Their assertion that this Court "already found [the subject discovery] relevant to the issue of CIH share valuation," Opp'n at 5, misses the mark and mischaracterizes the 1/26/26 Order. In fact, the Court **substantially limited** the scope of discovery sought by Petitioners and blocked their effort to obtain nine categories of documents that are "of little or no relevance to the CIH valuation" and therefore are "not relevant to Petitioners' claims." 1/26/26 Order, 2026 WL 205837, at *9. Thus, that part of the 1/26/26 Order actually supports the conclusion that Petitioners filed the Section 1782 proceeding to harass and retaliate against Balance Law.

Moreover, although the Court held that some of the categories of documents sought by Petitioners are relevant to the CIH share valuation, that holding does not rebut the conclusion that Petitioners filed the Section 1782 proceeding to harass and retaliate against Balance Law. The important issue is not whether some of the documents sought are relevant but why Petitioners decided to seek the documents from Balance Law, as opposed to a non-law-firm entity that also has the documents in its possession, custody, or control. The documents at issue here were produced by Balance Law to both plaintiffs that filed the State Court Action. Supplemental Liu Declaration ¶¶ 5-6. One of those plaintiffs, Lorelei NCC Inc. ("Lorelei"), is a New York corporation, *id*. ¶ 6 & Exhibit A, so Petitioners could have filed a Section 1782

9

proceeding against Lorelei to seek the documents that they seek here from Balance Law. Seeking the documents from Lorelei would have avoided the special legal/policy concerns that are implicated by discovery directed to a U.S. law firm for documents that it received from a foreign client. The decision by Petitioners (and/or their counsel) to seek the documents from Balance Law—not Lorelei—further supports the conclusion that they did so to harass and retaliate against Balance Law.

Petitioners' argument that the burden of the discovery sought is "minimal," Opp'n at 5, also lacks merit. As Petitioners (and their counsel) know full well, the time and expense required for Balance Law to respond to this Section 1782 proceeding and establish that Petitioners seek unduly broad, irrelevant discovery is itself burdensome. Unnecessarily imposing that litigation burden on Balance Law was part and parcel of Petitioners' harassment/retaliation scheme.

Balance Law is not required to prove definitively that Petitioners intended to harass and retaliate against it for serving a subpoena in the State Court Action. It is enough for Balance Law to make a showing sufficient to cause this Court to "suspect[] that the discovery is being sought for the purposes of harassment." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012). The record before this Court easily satisfies that standard.

## **CONCLUSION**

The case law regarding discovery sought from law firms establishes that, due to the special legal/policy reasons implicated by such discovery, it should be subjected to heightened scrutiny by courts when deciding whether to allow such discovery. Such discovery should be a last resort when—as is the case here—the law firm: (a) had no involvement in the events that give rise to the underlying litigation for which the documents are sought; (b) did not create any

of those documents; and (c) has the documents in its possession only because they were transmitted to the law firm from abroad by a foreign client.

    For the reasons set forth above and in the Opening Memorandum, the Court should subject the Subpoena to heightened scrutiny and quash it or, in the alternative, should issue an order along the lines addressed in the Conclusion of the Opening Memorandum.

Dated: New York, New York
        March 3, 2026

Respectfully submitted,

*B. Robert Liu*
_____
B. Robert Liu (Bar No. 5697552)
Balance Law Firm
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
(646) 558-4889 (fax)
robert.liu@balancelawfirm.com

Attorneys for Respondent Balance Law Firm PLLC d/b/a Balance Law Firm

11

**<u>Certificate Regarding Local Civil Rule 7.1 Compliance</u>**

Relying on the word count of the word-processing program used to prepare this document, the undersigned states that the number of words in this document is 3,498 and certifies that this document complies with the word-count limitation as set forth in Local Civil Rule 7.1.

*B. Robert Liu*
_____
B. Robert Liu (Bar No. 5697552)
Balance Law Firm
1 World Trade Center, Suite 8500
New York, NY 10007
(212) 741-8080
(646) 558-4889 (fax)
robert.liu@balancelawfirm.com

Attorneys for Respondent Balance Law Firm PLLC d/b/a Balance Law Firm