USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/10/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

507 SUMMIT LLC, et al.,

Applicants,

-against-

BALANCE LAW PLLC *d/b/a* BALANCE LAW
FIRM.

Respondent.

**25-MC-235 (KHP)**

**OPINION AND ORDER
ON
MOTION TO QUASH**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

507 Summit LLC and KOA Capital L.P. (collectively, the "Petitioners"), submitted an application requesting that the Court, pursuant to 28 U.S.C. § 1782, authorize Petitioners to issue subpoenas demanding that Balance Law PLLC d/b/a Balance Law Firm ("Respondent"), produce documents for use in an appraisal proceeding in the Grand Court of the Cayman Islands ("Cayman Court"), brought under Section 238 of the Cayman Islands Companies Act, to determine the fair value of Petitioners' Class A ordinary shares in China Index Holdings Limited ("CIH"). On January 26, 2026, the Petition was granted, but limited the scope of the documents Petitioner sought and permitted further motion practice on any objections to the subpoena issued. (ECF No. 21) The subpoena served seeks documents obtained by Respondent from its non-U.S. clients that were produced in a New York state court action in which its non-U.S. clients were defendants, pursuant to a protective order issued by the state court. The protective order stipulates that the documents were to be used solely for purposes of the state court action.

1

On February 25, 2026, Respondent moved to quash the subpoena Plaintiff issued in response to the Court's Order based on an issue not fully addressed in the Court's prior Opinion and Order; that its, whether it is contrary to public policy and overly burdensome to require Respondent – a law firm – to produce the documents in light of how and why they were obtained by Respondent and the circumstances under which they were produced in the state court action.   For the reasons that follow, Respondent's motion to quash is GRANTED.

## DISCUSSION

1. **Legal Standard**

Generally, after a Section 1782 petition is granted, the Court may address disputes about the scope of the subpoena issued under the Federal Rules of Civil Procedure ("Rule(s)"). *See In re SBK ART LLC*, 168 F.4th 68, 72, 83 (2d Cir. 2026) (finding that after the District Court fashioned an order "to meet the twin aims of Section 1782" and granted the petition, the respondent law firm's concerns were "properly addressed under ordinary discovery rules."); *see also Heraeus Kulzer, GmbH v. Biomet, Inc.,* 633 F.3d 591, 597 (7th Cir. 2011) ("The section 1782 screen — the judicial inquiry that the statute requires — is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court.  Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including Rule 26, come into play; and with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out."). Thus, the Court looks to Federal Rule of Civil Procedure when evaluating a motion to quash or compel compliance with a subpoena issued pursuant to Section 1782.  *See, e.g.*, *In re*

*Application of Gorsoan Ltd. and Gazprombank OJSC*, No. 13 Misc. 397 (PGG), 2014 WL 7232262, at *5, *10 (S.D.N.Y. Dec. 10, 2014).

A few general concepts are pertinent here. Federal Rule of Civil Procedure 45 provides that the party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). It also provides that the court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3).

Rule 26(b) cabins discovery to non-privileged information that is both relevant and proportional to the case. Fed. R. Civ. P. 26(b)(1). "[R]elevance is an extremely broad concept for purposes of discovery." *Edmar Fin. Co. v. Currenex, Inc.*, 347 F.R.D. 641, 646 (S.D.N.Y. 2024) (citing *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019) (Parker, M.J.)). "Information is 'relevant' if '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401); *see MacCartney v. O'Dell*, 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018) (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2 1357, 1367 (2d Cir. 1991)) (discovery permitted "if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action").

Proportionality "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "When

evaluating undue burden, the court considers the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed." *Blake Marine Grp. LLC v. Frenkel & Co.*, No. 18 Civ. 10759 (AT) (KHP), 2019 WL 1723567, at *1 (S.D.N.Y. Apr. 18, 2019). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Pearlstein*, 332 F.R.D. at 121 (citing *Villella v. Chemical & Mining Co. of Chile Inc.*, No. 15 Civ. 2106 (ER), 2018 WL 2958361, at *8 (S.D.N.Y. June 13, 2018)).

Motions to quash are "'entrusted to the sound discretion of the . . . court.'" *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 260 (S.D.N.Y. 2024). The movant carries the burden of showing that a subpoena imposes an undue burden on a witness. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009). To make this showing, a party must set forth "the manner and extent of the burden and the probable negative consequences of insisting on compliance.... [I]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) and *Croom v. Western Conn. State Univ.*, 218 F.R.D. 15, 17 (D. Conn. 2002)).

### 2. Analysis

In the context of a Section 1782 application, the Second Circuit has held that when the target of the Section 1782 discovery is a law firm the court should give heightened scrutiny to the request because, not only may the request implicate attorney-client privilege, but it also may chill open communications between foreign clients and their U.S. lawyers and/or lead to

4

other downstream consequences of subjecting a non-party law firm to discovery obligations in a foreign proceeding. *See Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018).

Courts have permitted Section 1782 discovery to be obtained from law firm respondents when the discovery sought involved non-privileged documents or documents over which the privilege was waived. *See, e.g.*, *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (stating any privilege pertaining to documents were sent by the client to Davis Polk to secure the firm's legal advice, was waived when the client voluntarily authorized Davis Polk to send the documents to the SEC and they had been publicly disclosed); see also *In re Lifetrade Litig.*, No. 17 Civ. 2987 (JPO) (KHP), 2022 WL 3644357, at *2 (S.D.N.Y. Aug. 24, 2022) ("[T]he privilege is waived if the holder of the privilege discloses or consents to the disclosure of the privileged communication to a third party.") (citing *Kleeberg v. Eber*, 2019 WL 2085412, at *7 (S.D.N.Y. May 13, 2019)).

Given that Respondent's client sent the documents at issue for "the purpose of being assessed by Balance Law for (among other things) discoverability and then produced to the plaintiff in the State Court Action," (ECF No. 24, at 9) it may seem, at first glance, that any protection that may have been afforded those documents was abrogated when they were produced in the state court derivative action and that there is limited burden to producing them here. However, unlike in cases where law firms were required to turn over documents that had been produced or made public, in this case, the documents, while not privileged, were produced pursuant to a protective order in litigation.

In *Kiobel*, the Second Circuit held that the district court abused its discretion in granting the Section 1782 petition because the discovery sought would have undermined a preexisting confidentiality order governing discovery produced in prior U.S. litigation and because the documents were in counsel's possession solely by virtue of that prior representation. *Kiobel*, 895 F.3d at 246-48. The Second Circuit's analysis turned centrally on the concern that Section 1782 should not be used as a workaround to evade protective-order restrictions and thereby discourage foreign clients from producing documents to U.S. counsel even under court-ordered confidentiality protections. *Id.; see also In re SBK ART LLC*, 168 F.4th at 81-82 (finding that presence of the confidentiality order was essential to the outcome *Kiobel* decision).

The same concerns that caused the court in *Kiobel* to preclude Section 1782 discovery from a U.S. law firm animate this matter. The documents sought by Petitioners were transmitted from abroad by one of Respondent's foreign clients to enable Respondent to provide legal advice and to make a document production in the New York derivative action. The documents were then produced in that action, not publicly, but pursuant to a protective order that required the documents to be used *only* for purposes of that litigation. Respondent states that its foreign client relied on the state court protective order when the documents were transmitted to Respondent from abroad and produced in discovery. While Petitioners argue that because the documents were previously produced in the state-court action, any concern about chilling attorney-client communications has dropped away, this Court does not agree. Petitioner's argument conflates confidential disclosure in litigation with public disclosure without a prior confidentiality agreement. Nothing in the record suggests that the documents lost their protected status vis-à-vis other litigants or became freely available for use

6

in unrelated proceedings just because they were produced in the state derivative action which has since settled.  To the contrary.  The production was made under a protective order designed to confine use of the documents to the derivative action itself.  (ECF No. 23-2, at ¶ 6)  Further, Petitioners – though expressing a willingness to enter a protective order for the purposes of obtaining the documents sought in this action – have not provided any assurances that the Cayman Islands Court will enforce a similar protective order here. (ECF No. 25, at pp. 3-4); s*ee id.*, at 247 ("*Kiobel* did not (presumably because she cannot) provide the U.S. courts with assurance that Dutch courts will enforce the protective orders that safeguard the confidentiality of Shell's documents. It is perilous to override the confidentiality order; doing so would inhibit foreign companies from producing documents to U.S. law firms, even under a confidentiality order, lest Section 1782 become a workaround to gain discovery.").

Allowing discovery here would convert a limited, court-supervised disclosure into a springboard for broader use in other litigation, thereby vitiating the underlying purpose of the protective order in the derivative action.  *See Kiobel*, 895 F.3d at 246-47.  As the court in *Kiobel* explained, if foreign clients have reason to fear that producing documents to U.S. counsel – even under a protective order – may later expose those materials to discovery in other proceedings, the likely result is hesitation in communications with counsel, incomplete document transmission, and "bad legal advice to the client, and harm to our system of litigation." *Id.* at 247.  It is an inevitable consequence, if universalized, that if litigants are allowed to subpoena documents previously produced confidentially for use elsewhere (notwithstanding a protective order under which they were produced), foreign clients will have diminished confidence that U.S. courts can meaningfully cabin downstream use.  *See also*

*Lelchook v. Lebanese Canadian Bank*, 670 F.Supp.3d 51, 55 (S.D.N.Y. 2023) (precluding discovery sought from attorneys under Rule 45, stating "the rationale for declining discovery aimed at foreign entities' U.S. law firms under Section 1782 applies with equal force to the same type of discovery sought pursuant to Rule 45.")

The policy considerations outlined above are factors that can be considered when evaluating if discovery is unduly burdensome and not proportional to the needs of the case. *Id*. That is, the burden imposed by the instant subpoena is significant because Respondent is a non-party law firm with no alleged involvement in the underlying transaction at issue in the Cayman appraisal proceeding, no financial interest in its outcome, and no role as a percipient actor in the events under valuation, and its relationship with its clients is threatened if the discovery is ordered and when allowing the discovery could undermine trust in judicial orders and the process of discovery in U.S. litigation. The burden is underscored when there may be more natural sources for the same information that have not been meaningfully ruled out. *See In re SBK ART LLC,* 168 F.4th at 85 (holding the district court's consideration of "the foreign location of the documents and the foreign status of their primary custodian" in addition to the overbreadth of the request militated against allowing for discovery (internal citations omitted)); *Banoka S.à.r.l. v. Elliott Mgmt. Corp.*, 148 F.4th 54, 68-69 (2d Cir. 2025) ("[A] court *must* limit the frequency or extent of discovery otherwise allowed if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." (internal quotation marks and citations omitted) (emphasis in original)); *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997) ("If it were clear that discovery were equally available in both foreign and

domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative [under Rule 26]."). Indeed, Petitioners have not articulated why they cannot seek the same documents elsewhere. The failure to pursue or explain the unavailability of less burdensome sources for the information sought in the subpoena also weighs against compelling production from counsel. *In re Application of Orthogen International GmbH,* No. 24 Misc. 504 (VSB) (KHP), 2026 WL 311482 (S.D.N.Y. Feb. 5, 2026). Insofar as the above analysis is sufficient to quash the subpoena, I do not address other arguments of Respondent.

### CONCLUSION

For the reasons set forth above, the motion to quash is GRANTED. Within one week of this Opinion and Order, the parties shall submit a letter to the Court indicating whether there are any outstanding issues for the Court to address or whether, alternatively, this matter can be closed.

**The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 22**

**SO ORDERED.**

Dated:    April 10, 2026
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

9